## UNITED STATES *v.* CORBIN.

*(Circuit Court, D. New Hampshire.*    March 13, 1882.)

1. CRIMINAL LAW—INDICTMENT—DOUBLE PLEADING.

  The expression "writing and affidavit," standing alone in an indictment, may mean two documents, but when accompanied by a recital of the writing and affidavit it is clearly shown to be but one instrument, and the pleading is not double.

2. SENDING FALSE AFFIDAVIT TO PENSION-OFFICE—INDICTMENT—ESSENTIAL ALLEGATIONS.

  An indictment for an offence against the statute of March 3, 1823, (3 St. at Large, p. 771, § 1,) for sending a false writing and affidavit to the pension-office, must set out all the ingredients of the offence with certainty and precision, and with sufficient particularity, that the court may know from the indictment whether he is to be tried for sending a writing and affidavit, not genuine in its execution, or one genuine in its execution but false in statement, and the particular statements which are false, and that they are material, or judgment will be arrested on motion.

On Motions for New Trial and in Arrest of Judgment.

*Mr. Rolfe,* U. S. Atty., for the United States.

*Mr. Burke,* for respondent.

CLARK, D. J.    The respondent was indicted under the statute of March 3, 1823, (3 St. p. 771, § 1,) for sending a false writing and affidavit to the pension-office.    He was found guilty by the jury, and now moves for a new trial, for various rulings of the court; and for arrest of judgment, for certain faults and defects in the indictment.

Before examining carefully the reasons for a new trial, the court has turned its attention to the motion in arrest of judgment; because, if the indictment be so deficient or insufficient that no judgment ought to be rendered upon it, a new trial would be of no avail to the government.    And so, if it be found that all the rulings of the court upon the trial were right, and there was no occasion for a new trial, and yet the indictment was fatally faulty, the judgment would have to be arrested.    Is, then, this indictment sufficient in its allegations, and are they well and correctly stated?    The respondent says it is not sufficient, nor is the pleading good:

(1) Because it is double, containing or including two distinct offences in one count, to-wit, that he (the respondent) transmitted to the pension-office a certain writing and affidavit—two distinct documents.    (2) That it (the indictment) does not definitely and specifically allege or assign the particular statements in the writing and affidavit believed to be false, and traverse the same, or alleged that they were false; and (3) that it charges no act which is a crime or misdemeanor by the laws of the United States.    (4) The act of March 3,

1823, (3 St. p. 771, § 1,) provides "that if any person or persons shall falsely make, alter, forge, or counterfeit," or shall transmit to or present at, or cause or procure to be transmitted to or presented at, any office or officer of the government of the United States, any deed, power of attorney, order, certificate, receipt, or other writing, in support of or in relation to any account or claim, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited, every such person shall be deemed and adjudged guilty of felony.

The indictment, after reciting that one Shedd had a claim against the United States, and that the respondent was intending and contriving to defraud the United States, and to induce them to pay the claim of Shedd, alleges that the respondent "did transmit, and cause and procure to be transmitted, to the office of the commissioner of pensions," to-wit, to the office of the commissioner of pensions of the United States, a certain writing and affidavit, purporting to be made, subscribed, and sworn to by one Adolphus Hall, and by one Jacob Litchfield, both of Grantham, in said district, in which writing and affidavit it was alleged and declared as follows: It then sets out the affidavit, *in hæc verba.* Then it proceeds: "The said Austin Corbin then and there, well knowing the said writing and affidavit to be false and untrue, and then and there well knowing the statements contained in said writing and affidavit to be untrue and false, then and there did willingly transmit to, and did cause and procure to be transmitted to, the office of the said commissioner of pensions the said false writing and affidavit," etc. Grounding himself upon this expression of "*writing* AND *affidavit*," the respondent supports his first objection, because he says the pleading is double; that he is accused of two crimes in the same count—that of sending a false *writing*, and of sending a false *affidavit*, to the pension-office. If this were so, we are inclined to the opinion that the objection would be of more serious import. Two crimes cannot be charged in the same count, and judgment will be arrested for such defective pleading. *State* v. *Nelson,* 8 N. H. 163; *Morse* v. *Eaton,* 23 N. H. 415. But we are of the opinion such is not the case here.

The expression "writing and affidavit" may mean two documents, or it may mean one—a writing called or known as an affidavit. Standing alone it might be ambiguous; but where the writing and affidavit is recited in the indictment it is shown clearly to be but one instrument,—an affidavit,—a writing called an affidavit.

This objection, therefore, must be overruled. If the sense of a word be ambiguous, it shall be construed according to the context. Arch. 41, and authorities cited. The next objection, that the indict-

ment does not specify the particular statements in the affidavit relied upon as false, is of a more serious character. The same objection in substance was taken at the trial, but was overruled upon the authority of the case in 8 How. 41, (*U. S.* v. *Staats.*)

The offence in that case was the same as in this; the indictment was substantially the same in its allegations, and upon the same clause of the same statute. There was in that case no particular assignment of the falsity of the writing or affidavit, but a general allegation that the respondent knew that it was "false and untrue," and the court held that the acts charged constituted an offence within the provisions of the statute, and overruled the *particular objections* there taken. ` A more careful examination of that case, however, and other authorities, together with a consideration of the principles and rules regulating criminal proceedings, has satisfied us that the objection is a fatal one, and that the judgment in this case must be arrested. Though in the case of *U. S.* v. *Staats* the indictment was the same as here, the point made here was not made there, nor does the attention of the court appear to have been called to it. Two considerations arose there: (1) Whether the indictment should not have described the offence to have been committed "*feloniously;*" and (2) whether the acts charged constituted the offence described in the statute; that is, whether the sending a writing false in its statements constituted the offence, or a writing false in its execution—not a genuine paper. The court held that the offence need not be described as committed *feloniously*, and that sending a paper containing false statements, though genuine in its execution, constituted the offence, but nothing further. No question was there made, like the one in this case, whether, in describing the offence, the indictment should not have been framed with more particularity, and have shown more definitely in what the falsity of the writing consisted.

It is a well-established rule in criminal proceedings that every indictment must charge the crime with such certainty and precision that it may be understood, charging all the requisites that constitute the offence, and that every averment be so stated that the party accused may know the general nature of the crime of which he is accused. 1 Chit. Crim. Law, 172; Arch. Crim. Pl. & Ev. 39. Thus, in an indictment for obtaining money by false pretences, it was held necessary to specify the false pretences. *R.* v. *Mason*, 2 T. R. 581; *R.* v. *Munoz*, 2 Strange, 1127. So, in an indictment for extortion, the indictment must show what fee was due, and what was taken. *R.* v. *Lake*, 3 Leon, 268. An indictment for stopping the highway

must specify what part was stopped, *R.* v. *Roberts*, Show. 389. So an indictment which may apply to either of two different offences, and does not specify which, is bad. *R.* v. *Marshall*, 1 Moody, C. C. 158.

Where the statute made it felony maliciously to kill cattle, it was held the particular kind of cattle must be specified. *R.* v. *Chalkley*, Roscoe & Ryan, 258.

Applying the rule as to certainty thus laid down by Chitty and Archibald, and illustrated by these decisions, the defects of this indictment become very apparent.

The indictment alleges the sending of a false writing and affidavit to the pension-office. Now, an affidavit may be false in its making, it may be forged, or it may be false in its statements. This indictment alleges that the affidavit was false and untrue, and that the statements in it were untrue and false,—an allegation broad enough to include a false and forged instrument, and one false in its statements but genuine in its execution, without specifying which. It may apply to either of the two offences, or both, but does not specify which, and therefore falls within the case of *R.* v. *Marshall*, 1 Moody, C. C. 158. Again: "The special matter of the whole fact ought to be set forth with such certainty that it may judicially appear to the court that the offence has been committed," (1 Russell, Crimes, § 304; Salkeld, Pleas of the Crown, book 2, c. 25, § 57;) and if any fact or circumstance which is a necessary ingredient of the offence be omitted in the indictment, such omission vitiates the indictment. Thus, in an indictment against a person for not serving in the office of constable, the mode of election must be set out to show that he was legally elected. *R.* v. *Harpur*, 5 Mod. 96. So, in prosecutions for perjury, the indictment must allege not only the taking of the oath, but in what proceeding and before what court, and that the oath was material. It must also set out particularly that part of the oath relied upon as false, with particular averments of its falsity. Arch. Pl. & Ev. 538, 539; Hawkins, book 2, c. 25, § 57. The statute in this case makes it an offence to send a false affidavit to any office or officer of the United States knowingly and with intention to defraud.

In the case of *U. S.* v. *Staats*, 8 How. 41, the court held that an affidavit or writing false in its statements, in contradistinction from falsity in execution, was within the description of the offence in the statute.

The affidavit set out in the indictment in this case contains numerous allegations. Some are material, some are not. Probably no one would contend that if the affidavit or writing were false only in some immaterial statements the crime had been committed; yet there is no allegation that the false statements were material, and no such particular specification or description of the false statements as will enable the court to say that they were material. It is quite true that the court instructed the jury that they must find the affidavit false in some material matter or allegation, but taking the indictment, and the verdict of guilty, no one can say whether the jury found the affidavit false in a material or immaterial part. And if it be sound law that the affidavit must have been false in some material allegation to warrant conviction, then it follows there are not sufficiently specific allegations in the indictment to sustain the verdict and warrant a judgment upon it. The indictment should have alleged the material false statement.

It is contended in the brief of the prosecuting officer that this is an offence, made such by special statute, and is set out in the language of the statute, and is, therefore, sufficient. But neither of these propositions can, as we think, be successfully maintained.

Archibald (Pl. & Ev. 46) says:

"As to indictments for offences created by statute, the statute contains a definition of the offence, and the offence consists of the commission or omission of certain acts under certain circumstances, and in some cases with a particular intent. An indictment, therefore, for an offence against the statute must with certainty and precision charge the defendant to have committed or omitted the acts under the circumstances and with the intent mentioned in the statute; and if one of these ingredients in the offence be omitted, the defendant may demur, move in arrest of judgment, or bring writ of error. The defect will not be aided by the verdict."

He cites *Lee* v. *Clarke*, 2 East, 333, and other cases.

The statute of 7 Geo. IV. c. 64, § 21, provides that if the indictment describe the offence in the words of the statutes, after verdict, it will be sufficient in all offences created or subjected to any greater degree of punishment by any statute; but we have no such statute.

Salkeld says, (Pleas of the Crown, book 2, c. 25, § 111:) "Neither doth it seem to be always sufficient to pursue the very words of the statute, unless by so doing you fully, directly, and expressly allege the fact in the doing or not doing thereof the offence consists, without any, the least, uncertainty."

We are of opinion that all the ingredients of this offence are not set out with sufficient particularity, and that neither the court nor the respondent could know from the indictment whether he was to be tried for sending an affidavit to the pension-office, not genuine in its execution, or one genuine in its execution, but false in statement; nor, if so false in statement, whether in a material or immaterial allegation; and that the judgment should be arrested.

Judgment arrested. Defendant discharged.