**August J. SERIO, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19819.**

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 18, 1967.

Decided April 7, 1967.

Burger, Circuit Judge, dissented in part.

Mr. Frederick S. Hird, Jr., Washington, D. C. (appointed by this court), for appellant.

Mr. James A. Strazzella, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker

and Donald S. Smith, Asst. U. S. Attys., were on the brief, for appellee.

Before EDGERTON, Senior Circuit Judge, and FAHY and BURGER, Circuit Judges.

FAHY, Circuit Judge:

Appellant was convicted on all counts of an indictment charging violations of 18 U.S.C. § 500, four counts charging false altering in material respects of four postal money orders, and four counts charging appellant and George R. La-Shine with uttering the same money orders. They were tried jointly. LaShine's conviction on the uttering counts has been affirmed by this court. LaShine v. United States, 126 U.S.App.D.C. ——, 374 F.2d 285. Appellant's sentences under the four altering counts are concurrent but are consecutive to his concurrent sentences under the uttering counts.

 We are urged to reverse because of the use at the joint trial of La-Shine's confession. The manner in which this question arises does not enable us to apply the principles set forth, for example, in the recent case of United States v. Bozza, 365 F.2d 206, 214–218 (2d Cir.), relied upon by appellant, for there defendants objected to the admission of a co-defendant's confession and moved for severance. Here, in contrast, Serio's trial counsel consented to the use of La-Shine's confession against LaShine, provided certain specified conditions designed to prevent prejudice to Serio were met, which was done.[1] Accordingly the question is whether the admission of this evidence was plain error affecting substantial rights within the meaning of Rule 52(b), Fed.R.Crim.P.[2] In applying this rule we are not confined to consideration of the alleged error in isolation from oth-

er circumstances. Crawford v. United States, 91 U.S.App.D.C. 234, 237, 198 F. 2d 976, 979. Cf. Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. A significant factor is the explicit consent of counsel to admission of the evidence upon conditions he specified. His judgment that prejudice to appellant was avoided in this manner is entitled to weight, though one might differ with it; and his judgment, when considered with the evidence as a whole, deters us from reversing under Rule 52(b).

A more basic contention is that the United States failed to prove that appellant (1) altered the money orders, (2) altered them in this jurisdiction, and (3) aided and abetted LaShine in uttering them.

Considering first the issue of aiding and abetting, there was evidence indicative of the situation we now outline. On April 25, 1964, the orders were issued in Baltimore for two dollars each. On the same day they were presented by La-Shine and cashed at liquor stores in Washington after three of them had been raised to eighty-two dollars and one to seventy-two dollars. The name of the purchaser appears in blocked handwriting on each as "Mrs. Rosia Lorenzo," 2238 Coral Thorn Road, located in Baltimore; and the payee is similarly written in as "Angelo C. Lorenzo." Appellant, so the evidence indicated, had written these names on the face of the orders, and his fingerprint appeared on one of them.[3] There was evidence the endorsements were in LaShine's handwriting, and he was identified as the person for whom one of the orders was cashed. La-Shine identified himself as the person named as payee by means of a Maryland

---

1. These conditions were that Serio's name be stricken and the confession be read but not shown to the jury. By agreement the words "another man" or appropriate modifications thereof were substituted for the name "Serio."

2. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Rule 52(b), Fed.R.Crim.P.

3. Apparently in filling in the name Rosia Lorenzo, Serio created a fictitious purchaser; for Angelo Lorenzo, who had previously lived at the Coral Thorn Road address, testified that Rosia Lorenzo had never lived there and was in fact unknown to him. The Coral Thorn Road address appeared on an old auto registration card which Angelo Lorenzo stated had been stolen from him.

driver's license issued to Angelo Lorenzo. This license, the evidence indicated, had been stolen.

■■ In the above manner there was brought together a set of circumstances which supports the trial court's denial of appellant's motion for acquittal as an aider and abettor to the uttering by La-Shine. The evidence of appellant's close and non-innocent association with the money orders the same day they were cashed in Washington, including evidence indicating they had been readied by him in part for uttering, could well lead reasonable men to conclude beyond a reasonable doubt that appellant was guilty of aiding and abetting the uttering.[4]

As to the convictions for altering the orders, the indictment of course placed venue in this jurisdiction. The evidence, however, fails to establish this. It indicates that Maryland, where the orders were issued and where appellant resided, was the place they were altered. Angelo Lorenzo, whose name was forged upon the orders, also resided in Maryland. The Lorenzo driver's license, above referred to, was issued in Maryland. At no relevant times is appellant placed in this jurisdiction.

■■ Faced with this factual situation as to venue, the United States contends there is a presumption "or at least an inference" that the altering occurred in this jurisdiction because the uttering occurred here. There is decisional support for a presumption that alteration of an instrument such as a money order occurred where it was uttered, provided the uttering was by the same person charged with the alteration, or the one so charged is shown to have been in possession of the instrument where the uttering occurred. True, in Judge Story's instructions to the jury in United States

v. Britton, 24 Fed.Cas. 1239, 1241 (No. 14,650) (C.C.D.Mass.1822), he stated there was a presumption an instrument was forged where it is first found in its altered state or uttered, but the defendant there had possession of the instrument when he unsuccessfully presented it for payment.[5] Other authorities state the presumption as requiring possession by the accused in the jurisdiction where he is charged with having made the alteration. 1 Wharton, *Criminal Evidence* (12th ed.) § 92; 3 Greenleaf, *Evidence* 120–21. Cf. The King v. Parkes & Brown, 2 Leach 776, 168 Eng.Rep. 488 (1797). And in Read v. United States, 55 App.D.C. 43, 45, 299 F. 918, 922, cert. denied, 267 U.S. 596, 45 S.Ct. 352, 69 L.Ed. 805, though it is not certain the court resorted to the presumption, it appears defendant had possession in this jurisdiction. In United States v. Di Pietroantonio, 289 F.2d 122 (2d Cir.), however, the court upheld venue in the District of Connecticut although defendant's possession in that District was not shown by direct evidence. But in so holding the court did not rely upon a presumption attaching to the place the instruments were uttered; the court relied upon circumstantial evidence deemed sufficient to enable the trier of the facts to have inferred that the altering had been done in Connecticut. In our case the evidence points to the altering having been done in Maryland. There is accordingly no room for the presumption, in the absence of possession of the orders by appellant in this jurisdiction. We add that the presumption which is supported by decisional law should not be expanded to cover such a case as this where two persons participated in such circumstances as to preclude a presumption that the documents were altered by one participant in this

4. Presence of an aider and abettor within a jurisdiction at the time the principal commits the crime therein is not essential to venue. Eley v. United States, 117 F. 2d 526, 528 (6th Cir.); Callahan v. United States, 53 F.2d 467, 468 (3d Cir.), aff'd, 285 U.S. 515, 52 S.Ct. 454, 76 L.Ed. 914; Hoss v. United States, 232 F. 328, 335 (8th Cir.). Cf. Williams v. United States, 94 U.S.App.D.C. 219, 215 F.2d 35.

5. In Conley v. United States, 23 F.2d 226 (4th Cir.), the court quoted Judge Story's statement of the presumption and found that venue lay in a different jurisdiction, where defendant was found in possession of the altered instruments.

jurisdiction because another defendant succeeded in uttering them here.

In Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519, the Supreme Court, in pointing out that Congress, subject to the limits of due process, may establish rules of evidence for the federal courts, and see Chapman v. State of California, *supra,* stated that when Congress legislates an evidentiary presumption there must be "a rational connection between the facts proved and the fact presumed."[6] No less is essential for a valid presumption of fact initiated by the judiciary. In the present case the facts indicating that the alterations occurred in Maryland prelude a rational inference that because LaShine uttered the instruments in Washington, Serio altered them here. The presence of the rational relationship is a matter of judgment, informed, however, as best can be by knowledge and experience.

The difficulty of detecting the locale of the alteration of an instrument leads to pressure upon the courts to permit a presumption in aid of proof; but as the Supreme Court held in *Tot,* quoted *supra,* note 6, the need for a rational relationship may not for this reason be dispensed with; the difference between the conclusion and the fact proved cannot be bridged presumptively where to do so would be arbitrary. Upon this reasoning the presumption relied upon by the Government does not apply in this case, and in its absence there is a failure of proof that the altering occurred in this jurisdiction.

Proof of venue in the District of Columbia was essential to the District Court's jurisdiction over the charges of altering by appellant. Two provisions of the Constitution itself require such proof:

The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed * * *.

U.S.Const. Art. III, § 2, cl. 3.

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district, wherein the crime shall have been committed * * *.

U.S.Const. Amend VI. Of course these venue provisions of the Constitution cannot be dispensed with as merely procedural or technical. Travis v. United States, 364 U.S. 631, 634, 81 S.Ct. 358, 5 L.Ed.2d 340; United States v. Johnson, 323 U.S. 273, 276, 65 S.Ct. 249, 89 L.Ed. 236.

Since venue for trial of the altering counts in this jurisdiction was not established we do not reach the separate issue whether alteration by appellant itself was established by the evidence. We hold only it was not established he altered the instruments in this jurisdiction.

Affirmed as to the uttering counts, 2, 4, 6, 8.

Reversed as to the altering counts, 1, 3, 5, 7.

6. The Court stated:

The Government seems to argue that there are two alternative tests of the validity of a presumption created by statute. The first is that there be a rational connection between the facts proved and the fact presumed; the second that of comparative convenience of producing evidence of the ultimate fact. We are of opinion that these are not independent tests but that the first is controlling and the second but a corollary. Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience.[9] This is not to say that a valid presumption may not be created upon a view of relation broader than that a jury might take in a specific case.[10] But where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them it is not competent for the legislature to create it as a rule governing the procedure of courts.

Tot v. United States, *supra* at 467–468, 63 S.Ct. at 1245 (footnotes omitted).

BURGER, Circuit Judge (concurring in part and dissenting in part).

I concur in the affirmance of the conviction for uttering forged documents, but I dissent from the majority's holding that the District Court did not have jurisdiction to try Appellant on the alteration counts.

The question we must decide is whether there was sufficient evidence to permit the jury to infer that the crime of uttering was committed in the District of Columbia. Fed.R.Crim.P. 18. Consideration of the evidence on this issue can well begin with Justice Frankfurter's admonition that:

> These are matters that touch closely the fair administration of criminal justice and public confidence in it, on which it ultimately rests. These are important factors in any consideration of the effective enforcement of the criminal law. They have been adverted to, from time to time, by eminent judges; and Congress has not been unmindful of them. Questions of venue in criminal cases, therefore, are not merely matters of formal legal procedure. They raise deep issues of public policy in the light of which legislation must be construed.

United States v. Johnson, 323 U.S. 273, 276, 65 S.Ct. 249, 250 (1944). In more concrete terms this is a reminder of the long history of the repugnance of Englishmen and Americans to being "transported for trial" to a place away from the scene of the charged events.

> The provision for trial in the vicinity of the crime is a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place. Provided its language permits, the Act in question should be given that construction which will respect such considerations.

United States v. Cores, 356 U.S. 405, 407, 78 S.Ct. 875, 877, 2 L.Ed.2d 873 (1958); see also Johnston v. United States, 351 U.S. 215, 223, 224, 76 S.Ct. 739, 100 L.Ed. 1097 (1956) (dissenting opinion of Douglas, J.). I submit that Congress' failure to provide specific venue provisions for every conceivable factual situation should not be utilized to reach a technical result that protects no rights of Appellant and may even injure him while preventing society from trying him as an alterer or at the very least requiring duplicate trials to convict him of both altering and uttering. The result reached by the majority is of the kind that undermines the "public confidence" in the administration of criminal justice to which Justice Frankfurter adverted.

The evidence showed that Appellant lived in Maryland and had altered a money order purchased at a Baltimore post office; the evidence is also clear that the money order had been uttered in the District of Columbia with the aid of a stolen Maryland driver's license. I believe that discovery of the money order in the District of Columbia in an altered state is sufficiently probative to permit the jury to infer that the crime was committed here, notwithstanding the possibility that the alteration was performed in Maryland.

The interests sought to be protected by the requirement of venue are not served by denying the District of Columbia jurisdiction on these counts. The money orders were purchased in Baltimore and cashed in the District of Columbia on the same day. I hardly think that Appellant would suffer any hardship if tried in the District of Columbia rather than in Baltimore, but I do fear that the government might not be able to establish venue in Maryland, so that its case would "fall between two stools." Venue is intended to protect defendants, but it is not designed to protect them by preventing the Government from trying them *anywhere*.

Furthermore, even assuming the majority's view of the evidence means that Appellant could be tried in Maryland, an equally undesirable stituation would arise—and one that would injure Appellant as well as society. Appellant would have been tried in the District of Columbia for aiding and abetting his

co-defendant in uttering the document; since the aiding and abetting consists of altering the document, the Government would have proved that Appellant altered the document. But to convict him of altering, it would be necessary to start a new prosecution in Maryland, and the major issue in this duplicate trial would be what had already been tried in the District of Columbia—whether Appellant had altered the money order. I would think the majority would seek to avoid this harassment of Appellant, even if it were not concerned with the waste of public resources.

These practical considerations are reflected in the cases which indicate that the presence of a forged or altered document in the jurisdiction permits a jury to infer that the crime was committed where the document is found. The cases sometimes state the rule in terms of presumption, sometimes as an inference, but at the very least the rule permits the jury to find the ultimate fact on the basis of the location of the forged document even if there is evidence pointing to a different jurisdiction. State v. Forbes, 75 N.H. 306, 73 A. 929 (1909).

As long ago as the case of United States v. Britton, 24 Fed.Cas. p. 1239 (No. 14650) (C.C.D.Mass.1822), the reasonableness of the presumption or permissible inference was recognized. There the defendant was found in Massachusetts with the check in his possession, but Justice Story, recognizing it as "the dictate of common sense and reason," stated the rule to be "that the place, where an instrument is found or offered in a forged state, affords prima facie evidence, or a presumption, that the instrument was forged there, unless that presumption be repelled by some other fact in the case." *Id.* at 1241.

The same basic rationale was applied by this Court in Read v. United States, 55 App.D.C. 43, 45, 299 F. 918, 922 (1924):

The instrument bore the name of the real estate firm with which defendant was negotiating in the District, to which firm defendant had been refer-red by another local real estate dealer. The evidence, therefore, *fully justified the inference that the forgery was committed in this District, where the instrument was produced and uttered.* (Emphasis supplied.)

It is true that the production of the document in the District included the presence of the defendant, but the Court did not rely on this at all. The evidence that the Court considered relevant, in addition to the place of production and uttering, was that the check was made out to the District real estate firm with which the defendant was negotiating and to which the defendant had been referred by another local real estate dealer. These factors seem completely irrelevant to the place of the commission of the forgery; and, since this court did not rely on the presence of the defendant in the jurisdiction, all that remains as probative of commission in the District is the place of the production and uttering of the document.

In Conley v. United States, 23 F.2d 226 (4th Cir. 1928), the defendant was found with stolen and altered bonds in his possession, but the Court stated the presumption to be that "the forgery was committed where the bonds were found in a forged state." 23 F.2d at 228. The presumption was employed in this case to defeat venue in the jurisdiction where the bonds had been stolen, although the court relied mainly on the evidence of hasty flight from the scene of the theft.

In the recent case of United States v. Di Pietroantonio, 289 F.2d 122 (2d Cir. 1961), 389 money orders had been stolen in Florida; 46 were cashed in Connecticut in an altered condition. The Court held that venue could lie in Connecticut because the defendant lived there and because most of the 46 money orders were cashed there, although there was no proof that he had cashed them.

Except for an English case of 1797, no case has been cited to us which requires the document to be found in the possession of the defendant for the inference to apply. I fail to understand why the majority labors so hard to avoid

applying so reasonable an inference and reaches a result that benefits no one but exposes Appellant to a separate trial in Maryland should the Government elect to pursue the matter.