UNITED STATES of America,
Appellee,

v.

Clifford Taylor LEE, Appellant.

No. 72-2062.

United States Court of Appeals,
Fourth Circuit.

Argued March 8, 1973.

Decided Oct. 5, 1973.

Thomas R. Dyson, Jr., Alexandria, Va., for appellant.

Justin W. Williams, Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and CRAVEN and WIDENER, Circuit Judges.

BOREMAN, Senior Circuit Judge:

Appellant, Clifford Taylor Lee (hereafter Lee or defendant), was tried and convicted by a jury in the District Court for the Eastern District of Virginia on all counts of a ten-count indictment. He was charged in four counts with forging Government Transportation Requests (GTR's) and in four counts with uttering the same, all in violation of 18 U.S. C. § 508. In the two counts remaining the defendant was charged with obtaining property by false pretenses in violation of 18 U.S.C. § 13 assimilating §§ 18.1–118 and 18.1–107 of the Code of Virginia, 1950, as amended, on lands under the territorial jurisdiction of the United States (18 U.S.C. § 7). On appeal the parties submitted an agreed statement of facts which may be stated in abbreviated form in the paragraphs to follow.

According to testimony it was shown that a GTR is a form of negotiable instrument and constitutes a request by a government agency (in this case the United States Department of Labor) to a carrier to furnish transportation to the designated bearer. At trial in 1972 none of the ticket agents had any recollection of the transaction involving any particular GTR and thus no agent was able to state whether or not the signature of the traveler or issuing officer thereon was made in his presence. Each agent was able to state positively that a particular GTR was passed to him at his

ticket counter at Washington National Airport by virtue of the stamp appearing on the back of the GTR which reflected the day of the uttering, the ticket agent's number, and the place where the GTR was received.

Each of the four GTR's has thereon a space for the signature of the issuing officer and a space for the signature of the traveler. All signatures on the four GTR's involved in this case were of unknown or fictitious persons except the purported signature of Thomas W. Hall. The head of the personnel department of the Department of Labor testified from his official records that no one by the name of Barry Adams, Terry Bell, John Thompson, Mary French or John Taylor had ever worked for the Department and no such names were reflected in any records of the Department.[1] The Government produced the real Thomas W. Hall, an employee of the Department, who testified that the signature on the GTR's bearing his name were forgeries and that he had never authorized anyone to sign his name; that he had never handled or received any of the GTR's here involved. There was other evidence to show that the GTR's were false and forged but that all of the tickets which were issued in exchange for them were, in fact, used for airline transportation.

The evidence disclosed that the defendant, Lee, was an attorney in the Solicitor's office of the United States Department of Labor. Extensive handwriting exemplars were taken from Lee and two handwriting and document analysts testified that the defendant was the forger of six of the eight names on the four GTR's with the high probability that the defendant affixed the remaining two signatures.

A forged GTR, admitted in evidence but not included in the indictment, had been passed on May 20, 1970, at the Northwest Airlines ticket counter of the Statler-Hilton Hotel in Washington, D. C. This instrument bore a number consecutive to that of one of the GTR's described in the indictment and there was circumstantial evidence to indicate that the two GTR's bearing consecutive numbers were used to provide transportation for a man and woman for round trip travel to Chicago, Illinois.

The defendant did not testify and the only witness for the defense was a fingerprint expert who testified that none of the fingerprints found on three of the four GTR's matched those of the defendant and that one which was passed at the Washington National Airport had no identifiable fingerprints on it. On cross-examination the expert testified that the defendant could have handled the forged instruments without leaving fingerprints thereon.

At the close of the Government's case Lee moved for a judgment of acquittal, pursuant to Rule 29, F.R.Crim.P., on the ground that the prosecution had failed to prove that venue lay in the Eastern District of Virginia since there was no evidence of any kind to show that the accused was ever in Virginia or that he committed a crime there. The United States countered with the argument that there was evidence sufficient to prove that Lee forged the instruments and that the prosecution was entitled to the benefit of a presumption that the forgery occurred in the Eastern District of Virginia because the GTR's were uttered there and were first found there in their forged condition.

---

1. The purported signature of Thomas W. Hall appears in the space provided for the signature of the issuing officer on three of the GTR's. The purported signature of Barry Adams appears in the space provided for the traveler's signature on one of the GTR's bearing the purported signature of Thomas W. Hall; on another the purported signature of Mary French appears in the space provided for the traveler's signature; on another the purported signature of John Taylor appears in the space provided for the traveler's signature. One GTR bore the purported signature of John Thompson as the issuing officer and the purported signature of Terry Bell appears in the space provided for the traveler's signature.

Included in the court's charge to the jury appear the following:

"Insofar as the offense of uttering or obtaining property or money by false pretenses, there is no evidence that the Defendant was the actual passer—which is what uttering is, passing or attempting to pass—or that he in fact actually tried to obtain or did obtain any airline tickets by means of false pretenses. Therefore, if the Defendant is to be found guilty of the offense of uttering or the offense of obtaining money or property by false pretenses he must be found guilty because he is what is known as an aider or abettor in a crime.

.    .    .    .    .    .

"The burden is also on the United States to prove, beyond a reasonable doubt, that the forgery was committed within the Eastern District of Virginia in order to give jurisdiction to this Court. In this connection, you are told that *in the absence of evidence to the contrary* the presumption is that the forgery was committed where the travel requests were first found in a forged state. That is, the finding of the forged instrument at the National Airport is itself sufficient to warrant the inference that the forgery was committed there and was, therefore, within the jurisdiction of this Court." (Emphasis added.)

■ Appellant Lee contends that the district court erred in denying his motion for judgment of acquittal, in ruling that the Government was entitled to a presumption that the forgery of the GTR's was committed where they were first found at the National Airport in a forged state and in so instructing the jury.

The United States Constitution contains pertinent venue provisions of general application. Art. III, § 2, Cl. 3 provides:

"The Trial of all Crimes, . . ., shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed . . . .."

Amendment VI provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district, wherein the crime shall have been committed . . . .."

The sole issue here is whether the evidence was sufficient to establish venue in the Eastern District of Virginia in which district the National Airport is located. The only relevant evidence was that the forged GTR's were passed or uttered in said district. We conclude that the assignments of error are without merit and that the convictions must be affirmed.

In support of his contentions Lee places sole reliance on Serio v. United States, 126 U.S.App.D.C. 297, 377 F.2d 936 (1967). That case involved four altered money orders which were presented and uttered in Washington, D. C., on the same day of their issuance. The defendant, Serio, was charged with altering the instruments and he and a codefendant were charged with the uttering thereof. The codefendant had been convicted on the uttering charge in the District of Columbia and his conviction had been previously affirmed on appeal by the D. C. Circuit. The evidence indicated, as stated in the majority opinion of the Court of Appeals, that Serio had filled in the money orders with the name of a payee whose automobile registration card and driver's license had been stolen. The evidence indicated that the codefendant had uttered the instruments in Washington, D. C. Serio was convicted on the altering counts, and on the uttering counts as an aider and abettor. The evidence further disclosed that the money orders were issued in Maryland, Serio resided in Maryland, the payee whose name was forged resided in Maryland, and the payee's stolen driver's license which was used for identification purposes in cashing the money orders was

issued in Maryland. The Serio court noted all of these facts and stated:

"Faced with this factual situation as to venue, the United States contends there is a presumption 'or at least an inference' that the altering occurred in this jurisdiction because the uttering occurred here. There is decisional support for a presumption that alteration of an instrument such as a money order occurred where it was uttered, provided the uttering was by the same person charged with the alteration, or the one so charged is shown to have been in possession of the instrument where the uttering occurred. True, in Judge Story's instructions to the jury in United States v. Britton, 24 Fed.Cas. 1239, 1241 (No. 14,650) (C.C.D.Mass.1822), he stated there was a presumption an instrument was forged where it is first found in its altered state or uttered, but the defendant there had possession of the instrument when he unsuccessfully presented it for payment. Other authorities state the presumption as requiring possession by the accused in the jurisdiction where he is charged with having made the alteration. 1 Wharton, Criminal Evidence (12th ed.) § 92; 3 Greenleaf, Evidence 120–21. Cf. The King v. Parkes & Brown, 2 Leach 776, 168 Eng.Rep. 488 (1797). And in Read v. United States, 55 App.D.C. 43, 45, 299 F. 918, 922, cert. denied, 267 U.S. 596, 45 S. Ct. 352, 69 L.Ed. 805, though it is not certain the court resorted to the presumption, it appears defendant had possession in this jurisdiction. In United States v. Di Pietroantonio, 289 F.2d 122 (2d Cir.), however, the court upheld venue in the District of Connecticut although defendant's possession in that District was not shown by direct evidence. But in so holding the court did not rely upon a presumption attaching to the place the instruments were uttered; the court relied upon circumstantial evidence deemed sufficient to enable the trier of facts to have inferred that the altering had been done in Connecticut. *In our case the evidence points to the altering having been done in Maryland. There is accordingly no room for the presumption, in the absence of possession of the orders by appellant in this jurisdiction. We add that the presumption which is supported by decisional law should not be expanded to cover such a case as this where two persons participated in such circumstances as to preclude a presumption that the documents were altered by one participant in this jurisdiction because another defendant succeeded in uttering them here.*" (Emphasis added.) 377 F.2d at 939–940.

The majority affirmed the convictions of Serio on the uttering counts but reversed the convictions on the altering counts since, as the court concluded, the evidence pointed to the fact that the altering was done in Maryland there was no room for the presumption in the absence of possession of the orders by Serio in the District of Columbia and that the District of Columbia had no jurisdiction of the altering counts.

Judge Burger (then United States Circuit Judge, now Chief Justice of the Supreme Court) concurred in the affirmance of the conviction for uttering forged documents but vigorously dissented from the holding that the district court did not have jurisdiction to try Serio on the alteration counts. Judge Burger's dissent was based primarily on the ground that, in the words of Justice Frankfurter in United States v. Johnson, 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236 (1944), venue is a matter which touches closely "the fair administration of criminal justice and public confidence in it, on which it ultimately rests," and which raises "deep issues of public policy." He wrote that "Venue is intended to protect defendants, but it is not designed to protect them by preventing the Government from trying them *anywhere.*" (Emphasis in the dissenting opinion. 377 F.2d at 941.) Judge Burger added that, even assuming the majority's view of the evidence means

that Serio could be tried in Maryland on the altering charges, such a second trial would be a waste of public resources and an undue harassment of Serio; these practical considerations are reflected in the cases which indicate that the presence of a forged or altered document in the jurisdiction permits a jury to infer that the crime was committed where the document is found; the cases sometimes state the rule in terms of presumption, sometimes as an inference, but at the very least the rule permits the jury to find the ultimate fact on the basis of the location of the forged document even if there is evidence pointing to a different jurisdiction.

Some years ago, in Conley v. United States, 23 F.2d 226 (4 Cir. 1928), this court adopted and applied the rule as stated by Judge Story in United States v. Britton, 24 Fed.Cas. 1239, 1241 (No. 14,650) (C.C.D., Mass.1822). In *Conley* the defendant was charged in the Middle District of North Carolina with altering three stolen registered United States Liberty Bonds by erasing names of payees, and with possession of the bonds so altered with intent to defraud. The bonds were stolen at Greensboro, North Carolina, on October 2, 1926, and on November 19, 1926, defendant Conley was arrested while sitting at a table with companions in a resort in Detroit, Michigan, and the three stolen bonds, with the names of the payees erased, were found under the table. Conley was convicted and sentenced to imprisonment for a term of ten years. This court reversed the conviction, holding that the North Carolina district court had no jurisdiction since proper venue was not established and stated:

"[T]he presumption is, in the absence of evidence to the contrary, that the forgery was committed where the bonds were found in a forged state. The rule is thus stated by Mr. Justice Story in U[nited] S[tates] v. Britton, Fed.Cas.No.14650, 24 Fed.Cas. at page 1241.

" 'And I take the rule of law to be, that the place, where an instrument is found or offered in a forged state, affords prima facie evidence, or a presumption, that the instrument was forged there, unless that presumption be repelled by some other fact in the case. . . . The rule, which I have stated, is not merely correct in a legal sense, but is the dictate of common sense and reason. If a forged instrument is found or uttered in one place, and there is no evidence to show, that it was forged elsewhere, what ground is there to presume, that it was not forged, where it was found, or uttered? If its existence in a forged state is not proved in any other place, it must, from the necessity of the case, be presumed to have been forged, where its existence in such state is first made known.' " 23 F.2d at 228.

This court reached the conclusion that the larceny of the bonds and having the bonds in possession unaltered are not federal offenses. The charges upon which the defendant was tried, convicted and sentenced were the altering of the stolen bonds and having them in possession after they were altered, offenses which are clearly a violation of the federal statutes. A different question would have been presented had Conley been charged and tried in Detroit where he was found in possession of the altered bonds.

In United States v. Owens, 460 F.2d 467 (5 Cir. 1972), the court was asked to affirm the conviction of the defendant for aiding and abetting the interstate transportation of forged money orders. The evidence disclosed that one Raymond Roberts, who resided near the defendant in Shreveport, Louisiana, stole approximately 68 Nation-Wide Money Orders from a store in Patterson, New Jersey. One month later the defendant and his brother attempted to cash five of the stolen money orders at a grocery store in Shreveport. Police were called and as they entered the grocery store the defendant and his brother fled. 18 U.S.C. § 2314 makes it a crime for any person to transport in interstate

or foreign commerce any falsely made, forged, altered, or counterfeit securities, knowing the same to have been falsely made, forged, altered, or counterfeited. On appeal from Owens' conviction the court held that in order to prove the commission of an offense under § 2314 the prosecution must show that the instrument traveled interstate in its forged or altered condition. At page 469 the court stated:

"The difficulty of detecting and proving the locale of the alteration or forgery of the security has engendered a presumption in aid of proof. As early as 1822 Judge Story instructed a jury that there exists a presumption that an instrument was forged where it was first found in its altered state or uttered. . . . Applying this rule to the instant case, a presumption arises that the five money orders which the defendant attempted to utter were falsely made and forged in Louisiana. Of course, as the Government correctly notes, this presumption does not obtain when circumstances reasonably indicate that alteration or forgery occurred outside the jurisdiction where the instrument was first found in its forged state or uttered. *See, e. g.*, Castle v. United States, 5 Cir. 1961, 287 F.2d 657."

Since there was no evidence to show where the forgery of the money orders had occurred and the defendant's possession in Louisiana of forged money orders recently stolen in New Jersey did not establish that the money orders had been transported interstate in a forged or altered condition the conviction was reversed.

It thus appears that in both *Conley, supra,* and *Owens, supra,* the presumption that an instrument was forged where it was first found in its altered state or uttered was applied to protect a defendant and to reverse his conviction where there was no evidence to show where the alteration or forgery had occurred. The evidence in the instant case

is sufficient to identify Lee as the forger of six of the eight names on the GTR's and also to further identify him by a finding of "high probability" as the forger of the remaining two signatures. The evidence clearly established that the GTR's here involved were uttered in Virginia and were first found there in a forged state. We reaffirm the holding of this court in *Conley, supra,* to the effect that, in the absence of evidence to the contrary, the presumption is that the forgery was committed where the instruments were first found in a forged state. Thus it follows that venue was properly established and the convictions on the forgery counts must be upheld.

■ Next we turn to the charges of uttering the forged GTR's and to the assimilated crimes of obtaining property by means of false pretenses.

It is established beyond doubt that the uttering or passing of the forged instruments described in the indictment occurred in the Eastern District of Virginia at the Washington National Airport and no question as to venue arises. However, none of the airline ticket agents was able to testify as to the identity of the utterer.

As hereinbefore shown the district court instructed the jury that if Lee was to be found guilty of the offense of uttering or obtaining money or property by false pretenses he must be found guilty because he is what is known as an aider or abettor in crime. No challenge is presented on appeal to the propriety of this instruction. This court has decided that the prosecution is entitled to an aiding and abetting instruction even though the defendant is charged solely as a principal. United States v. Duke, 409 F.2d 669, 671 (4 Cir. 1969). While there was no direct evidence that Lee himself uttered or passed the forged GTR's there is circumstantial evidence, sufficient in our view, to show that he aided and abetted the uttering.

A GTR which was introduced into evidence as Exhibit 2 was issued to Mrs. Mary French and was passed on May 20, 1970, at the American Airlines Ticket Office at the Washington National Airport, requesting transportation to Chicago and return. A GTR identified as Exhibit 4A was passed on May 20, 1970, at the Northwest Airlines ticket counter of the Statler-Hilton Hotel in Washington, D. C., and requested transportation to Chicago and return for John Taylor although the GTR identified as Exhibit 4A was not one of those included in the indictment. The evidence established that Exhibit 2 and Exhibit 4A were forged by Lee and were shown to bear consecutive numbers. It appeared from the evidence that Lee had taken sick leave from his employment on Thursday, May 21, and Friday, May 22, 1970. Evidence indicated that Lee was the holder of an American Express Credit Card and that this credit card was in fact used in Chicago on approximately May 22 in payment of a charge incurred at a Chicago restaurant in the amount of $6.89. While it was shown that the signature on the charge slip was not that of the defendant the evidence indicated that the credit card was never reported lost or stolen. There was no evidence to show that the charge from the Chicago restaurant or any other credit card charge to Lee was ever dishonored or contested. It was further disclosed by evidence that the defendant Lee had close connections with Chicago by reason of previous government employment and residence there.

A GTR identified as Exhibit 3 requested transportation for Terry Bell from Washington to Chicago and return and was honored by United Airlines at the Washington National Airport on July 9, 1970. A GTR identified as Exhibit 4 requested transportation for Barry Adams from Washington to Chicago and return and was honored by Trans-World Airlines Ticket Office at Washington National Airport on June 5, 1970.

GTR identified as Exhibit No. 1 requested transportation for John Taylor from Washington, D. C., to New York City and return and was honored by Eastern Airlines Ticket Office at Washington National Airport on May 27, 1970. While the GTR identified as Exhibit 1 was incorrectly described in the forgery count of the indictment as requesting transportation from Washington to Chicago and return it was obvious that this was only a typographical error since a copy of the GTR itself was attached to and made a part of the indictment. It was correctly described in the uttering count as a request for transportation from Washington to New York City and return. No objection to this GTR was interposed because of the error in its description.

As the forger it is clear that Lee had to have possession of the GTR's mentioned in the indictment at some time after they were stolen. The forged GTR's which were the subjects of the counts in the indictment were, in fact, uttered in Virginia and we are of the opinion that the jury could find that even if Lee himself did not actually utter them he aided and abetted the unidentified utterer by knowingly forging the signatures and preparing them to be passed in the Eastern District of Virginia at the Washington National Airport. Such evidence could lead reasonable men to conclude beyond a reasonable doubt that Lee was guilty of aiding and abetting the uttering and the same reasoning would apply to the counts on which the defendant was convicted of obtaining property by false pretenses.

The convictions on all counts of the indictment and the judgments entered thereon are

Affirmed.