### UNITED STATES v. MOORE et al.

(District Court, N. D. New York. April 2, 1894.)

1. FORGERY—REV. ST. § 5421—FALSE NOTARIAL CERTIFICATE.
    The making, or procuring to be made, an affidavit with the false statements that the pension claimant and identifying witnesses appeared before the notary, and that the alleged affiants subscribed their names and were sworn in his presence, where all its signatures are genuine, and no part has been altered, forged, or counterfeited, is not indictable under Rev. St. § 5421, which provides a punishment for every person who "falsely makes," or procures to be "falsely made," a writing, etc.

2. SAME—INDICTMENT.
    An indictment for making, or procuring to be made, a false affidavit, must allege specifically in what the falsity consists, and connect defendant therewith.

At Law.   Indictment of W. Bowen Moore and Achille J. Oishei under Rev. St. § 5421.   Heard on demurrer.

William F. Mackey, Asst. U. S. Dist. Atty., for the United States.
John Laughlin, for Moore.
George W. Cothran, for Oishei.

COXE, District Judge.   It is agreed by all that the indictment is founded upon the first paragraph of section 5421, of the Revised Statutes of the United States, which is as follows:

"Every person who falsely makes, alters, forges, or counterfeits; or causes or procures to be falsely made, altered, forged, or counterfeited; or willingly aids or assists in the false making, altering, forging, or counterfeiting, any deed, power of attorney, order, certificate, receipt, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States, or any of their officers or agents, any sum of money;" shall be imprisoned, etc.

The indictment alleges that on the 24th of October, 1892, at Buffalo, the defendants "did then and there knowingly, wrongfully and unlawfully falsely make and willfully aid and assist in the false making of a certain affidavit and writing for the purpose of enabling another person, to wit, Christian Neusel, to obtain and receive from the United States of America a certain sum of money, to the jurors aforesaid unknown, then and there claimed to be due to the said Christian Neusel on account of his military services and disabilities incurred" during the war of the Rebellion.   The indictment then sets out the affidavit in full.   It contains the necessary facts to enable the applicant to obtain a pension.   It is signed by him and by two identifying witnesses and states that all of the affiants appeared before the subscribing notary public. It also contains a jurat signed by "A. J. Oishei, Notary Public," in which he certifies that the affidavit was subscribed and sworn to before him, and that its contents were fully made known and

explained to the applicant and witnesses before they swore to it. The indictment then proceeds to point out that the affidavit was falsely made for the reason that the claimant and the identifying witnesses did not appear and were not sworn before the defend ant Oishei. The defendants demur on the ground that the indict ment does not state an offense of which the court has jurisdiction.

The authorities are unanimous in holding that the first para graph of section 5421 is a forgery and not a perjury statute. It punishes one who falsely makes an affidavit and not one who makes a false affidavit. The words of the statute are ejusdem generis and are the words usually adopted to describe the crime of forgery. "False making" may almost be said to be synonymous with "forging." U. S. v. Staats, 8 How. 41; U. S. v. Barney, 5 Blatchf. 294, Fed. Cas. No. 14,524; U. S. v. Wentworth, 11 Fed. 52; U. S. v. Reese, 4 Sawy. 629, Fed. Cas. No. 16,138; U. S. v. Cameron, 3 Dak. 141, 13 N. W. 561; State v. Willson, 28 Minn. 52, 9 N. W. 28; Mann v. People, 15 Hun, 155; State v. Young, 46 N. H. 266; Com. v. Baldwin, Gray, 197; Barb. Cr. Law, 97; Whart. Cr. Law, § 653; People v. N. Y. § 520. It is clear then, if the indictment merely charges the defendants with making an affidavit which contains a false statement of fact, that the offense cannot be punished under the paragraph quoted. For reasons stated hereafter it is thought that the indictment is defective under any construction of the statute, but assuming now that it contains a full and clear statement of all the acts of omission and commission attending the fabrication of the affidavit and jurat, it amounts only to an averment that the notarial certificate is false. The names signed to the affidavit and jurat are all genuine. No part of the affidavit has been altered, forged or counterfeited. The vice of the affidavit is that the statements that the claimant appeared before the notary, that the identifying witnesses appeared before the notary and that all of the alleged affiants subscribed their names and were sworn in the presence of the notary, are false. In short, the certificate contains a number of false state ments; it is a false certificate, but not a forged certificate. No authority has been cited or found by the court holding that a no tary who signs a certificate containing untruthful statements is guilty under a forgery statute. The statute must be construed strictly, and, until such authority is presented, I shall hold that the paragraph quoted does not cover such an offense.

But in any view of the law the indictment is defective. It can not be sustained even if it be assumed that the statute covers an affidavit which contains false statements of fact. The affidavit in controversy is on its face sufficient in substance and form. It is an elementary rule of criminal pleading that it is not enough to set out a lengthy instrument and allege generally that it is false. U. S. v. Corbin, 11 Fed. 238; Whart. Cr. Law, § 1300. The de fendant is entitled to know wherein it is alleged to be false in order that he may be prepared to meet the charge at the trial. Recog nizing the force of this rule the pleader proceeds to point out the particular omission which constitutes the alleged false making, viz.,

that the claimant and witnesses did not appear and were not sworn before the defendant Oishei. The indictment is silent as to any act done by the defendant Moore, much less as to any unlawful act. There is nothing in the affidavit itself which shows that he drew it, or that he was present, at its fictitious verification. Indeed, the falsity of the affidavit is predicated of an act of the defendant Oishei. If the affidavit is false only because Oishei made a false certificate it is manifest that Moore did not make it false. The test is this: If the United States proves just what it has alleged in this indictment the court will be compelled to discharge the defendant Moore. It can prove no more than it has alleged and it has alleged no act of his which made or tended to make the affidavit false. As to the defendant Oishei there is, perhaps, more doubt. The allegation as to him is that the witnesses did not appear before him. There is, however, no allegation that he was a notary public, that he signed the jurat or caused it to be signed or knew that it had been signed, or that "A. J. Oishei," whose name appears at the end of the affidavit, is the defendant. It is true that the indictment charges that the witnesses did not appear before the defendant, but there is no allegation, so far as this part of the indictment is concerned, that the defendant himself did any act whatever. For aught that appears to the contrary the entire affidavit may have been drawn by some third party—the defendant Oishei never having seen it or touched it with a pen. It follows that the demurrer must be sustained.