**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Raymond OWENS, Defendant-Appellant.**

No. 71–3322.

United States Court of Appeals, Fifth Circuit.

May 11, 1972.

Roland J. Achee, Shreveport, La. (Court-Appointed), for defendant-appellant.

Donald E. Walter, U. S. Atty., Paul Lynch, Asst. U. S. Atty., Shreveport, La., for plaintiff-appellee.

Before WISDOM, GOLDBERG and CLARK, Circuit Judges.

GOLDBERG, Circuit Judge:

In this case we are asked to affirm the conviction of a seventeen-year-old boy for aiding and abetting the interstate transportation of forged money orders. His conviction rests on restless pedestals—a combination of irrelevant presumptions and irrational inferences. Unless we conclude that reason and rationality have departed the law, reversal is compelled in this case.

This is an in forma pauperis appeal from a conviction and sentence un-

der the Federal Juvenile Delinquency Act, 18 U.S.C.A. § 5031 et seq. The Bill of Information in this case, which was filed after the execution of a Waiver of Indictment and Jury Trial, charged the defendant, Raymond Owens, with aiding and abetting one Raymond Roberts in the interstate transportation of five falsely-made and forged Nation-Wide Money Orders, in violation of 18 U.S.C.A. §§ 2 and 2314. The proof showed that in December of 1970, Raymond Roberts, who resided near the defendant in Shreveport, Louisiana, stole approximately 68 Nation-Wide Money Orders from a store in Patterson, New Jersey. One month later the defendant and his brother, Jerome Owens, appeared before the head cashier at a grocery store in Shreveport. The cashier testified that the defendant told his brother to put the five money orders in the window, and the cashier would cash them for him. The cashier immediately recognized the five money orders as being identical to those presented one week earlier by another person, which had been returned to the store and reported as stolen by the Nation-Wide Check Corporation. Accordingly, the cashier asked the defendant and his brother to wait a few minutes, she then notified the store manager, and the manager called the police. As the police entered the grocery store, the defendant and his brother fled. The district court determined that Raymond Owens was guilty as charged and committed him to the custody of the Attorney General of the United States for the balance of his minority. The defendant on appeal raises the lone contention that the Government failed to prove beyond a reasonable doubt an essential element of the alleged offense; that is, that the five money orders which the defendant attempted to cash had been transported in interstate commerce after they had been falsely made and forged. Since the record is totally barren of any direct or circumstantial evidence tending to show that the five money orders in this case were transported interstate in a falsely-made and forged condition, we must reverse the defendant's conviction.

■■ Under 18 U.S.C.A. § 2314, it is unlawful for any person to transport "in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited; . . ." It is obvious that to prove the commission of an offense under this portion of section 2314 the Government must show that the instrument traveled interstate in its forged or altered condition. The difficulty of detecting and proving the locale of the alteration or forgery of the security has engendered a presumption in aid of proof. As early as 1822 Judge Story instructed a jury that there exists a presumption that an instrument was forged where it was first found in its altered state or uttered. United States v. Britton, C.C.D. Mass.1822, 24 Fed.Cas. 1239, 1241 (No. 14,650). Applying this rule to the instant case, a presumption arises that the five money orders which the defendant attempted to utter were falsely made and forged in Louisiana. Of course, as the Government correctly notes, this presumption does not obtain when circumstances reasonably indicate that alteration or forgery occurred outside the jurisdiction where the instrument was first found in its forged state or uttered. See, e. g., Castle v. United States, 5 Cir. 1961, 287 F.2d 657. In the instant case the Government advances several circumstances which allegedly assuage the probative force of this presumption and affirmatively show beyond a reasonable doubt that the five money orders did not make an interstate journey in their pristine state.

■ First, the Government points to the failure of the defendant to explain where the five money orders were falsely made and forged. At the trial of this case Raymond Owens took the witness stand on his own behalf and denied any participation in the alleged attempt to

pass the stolen money orders. The district court found that the defendant "lied through his teeth." The Government contends that the defendant's failure to offer an explanation concerning the facts and circumstances surrounding his acquisition of the money orders justifies an inference that the five money orders were in a forged and falsely-made condition at the time of their interstate transport. We have no hesitation whatsoever in treating this contention as cavalierly as the contention itself treats the defendant's presumption of innocence. When the day comes that the constitutional presumption of innocence is abandoned, then, and only then, will Raymond Owens stand mute before the Bar of Anglo-Saxon jurisprudence and be found guilty of the offense charged.

■ In addition, the Government points to evidence that the five money orders in this case were not in consecutively numbered sequences, and that some of the other 68 money orders which Raymond Roberts stole had surfaced in other parts of the country. On the basis of this evidence the Government claims that it is not at all improper to infer that there was a deliberate attempt to confuse authorities by a diversification and intermingling of the 68 money orders. However, even assuming the utmost propriety of this inference, we are totally unable to comprehend, nor does the Government explain, in what manner or degree the presumed fact detracts from or otherwise repels the presumption that the five money orders in this case were forged and falsely made in Louisiana.

■ Also, the Government contends that the defendant's flight from the grocery store at the time of the police's arrival represents strong probative evidence of the defendant's guilt. We certainly agree that the defendant's flight and fright constitute probative evidence of his guilt. But do they by any elasticity of inferences tend to prove that the money orders in this case were forged and falsely made in New Jersey? The Government seemingly asserts that a defendant's flight can reasonably be used to prove any or all elements of an offense. Of course, we would not disagree that the defendant's attempt to avoid apprehension in this case might reasonably lead to a conclusion that he had a guilt complex or that he knowingly attempted to cash forged money orders. However, we are unwilling to assume that, as a federal matter, Owens' flight was prompted in the slightest degree by his knowledge that the money orders which he attempted to cash were not forged and falsely made within the territorial boundaries of the sovereign State of Louisiana.

■ Finally, in its attempt to rebut the presumption that the forgery occurred in Louisiana, the Government relies upon that presumption which arises from the unexplained possession of recently stolen property. This presumption permits the trier of fact to infer that the possessor of recently stolen property has knowledge that the property is stolen. See, e. g., Overton v. United States, 5 Cir. 1968, 405 F.2d 168; Beufve v. United States, 5 Cir. 1967, 374 F.2d 123, cert. denied 389 U.S. 881, 88 S.Ct. 122, 19 L.Ed.2d 175. The Government asserts that in the instant case this presumption arising from the defendant's unexplained possession of the recently stolen money orders should permit the trial court to infer that the defendant knew that the money orders were forged and falsely made in a state other than Louisiana. However, we do not think that possession can be used to prove every antecedent fact up to and including the property's creation. In Hale v. United States, 5 Cir. 1969, 410 F.2d 147, Judge Gewin, in a sage caveat, admonishes us against finding guilt by a mere concatenation of events. Speaking to the usefulness of the presumption accompanying the unexplained possession of recently stolen property, Judge Gewin stated:

"The inference allowed by unexplained possession is a powerful one.

It is a substitute for direct proof of guilty knowledge and courts, both trial and appellate, should proceed with extreme care in determining whether the evidence sufficiently establishes a basis for the inference. Cautious vigilance must be maintained against the employment of a naked legal principle in a factual setting which provides no reasonable basis for the principle's application. On the other hand, the jury must not be *unduly* inhibited in its search for truth; it must be permitted to draw *fair* and *reasonable* inferences from creditable evidence."

410 F.2d at 150 [emphasis in the original; footnotes omitted]. Exercising cautious vigilance, we cannot condone the employment of this presumption to prove the interstate movement of forged and falsely-made instruments. The bare fact of the defendant's possession of recently stolen money orders cannot *fairly* and *reasonably* give rise to the inference that the instruments were forged and falsely made prior to their interstate transportation.

The Government in this case has simply failed to prove an essential element in a specific and detailed offense. It may very well be that Raymond Owens, in attempting to cash these money orders, committed many crimes, both state and federal. We are certainly not unsympathetic to the acute need to punish the crimes that are proliferating on our streets. However, in this case the Government, apparently in its zeal for maximum punishment, sought a conviction for a local wrong under a criminal statute which defies intrastate activities. While a zealot often sees the row's end, he works on pathways of mirages, rather than on concrete facts, in order to establish proof. Rid ourselves of forgers we must, but let our convictions be forged by law and not counterfeited with irrational inferences and irrelevant presumptions.

The defendant's conviction is reversed.