**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Michael J. WILLIAMS, Defendant-Appellant.**

**No. 74–1029.**

United States Court of Appeals, Tenth Circuit.

June 21, 1974.

C. Nelson Day, U. S. Atty., and James M. Dunn, Asst. U. S. Atty., Salt Lake City, Utah, for appellee.

William D. Marsh, Ogden, Utah, for appellant.

Before HILL, BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

Michael J. Williams appeals from a jury conviction and sentence resulting from trial held in Ogden, Utah, on November 7th and 8th, 1973. Williams had been charged with the violation of 18 U.S.C.A. § 2314, to-wit: Interstate transportation of a forged and falsely made security.

Williams was charged as follows: That on or about February 21, 1973, at Ogden, Utah, he did, with unlawful and fraudulent intent, transport from Ogden to Los Angeles, California, a forged and falsely made security, to-wit, a Travelers Express Money Order No. 2058839145, payable to him in amount of $190.00, signed Betty A. Williams, dated February 21, 1973, and endorsed by appellant Williams knowing the same to have been forged and falsely made.

Appellant urges the following grounds for reversal of his jury conviction and sentence: (1) that he was deprived of a fair trial when the trial court ordered that trial proceed, notwithstanding that appellant appeared before the jury in soiled jail attire, which deprived him of his fundamental right to a presumption of innocence; and (2) that the trial court erred by failing to adequately define the elements of the crime charged.

I.

Following his arrest, Williams was incarcerated in a Salt Lake City jail. He was driven from Salt Lake City to Ogden on the morning of trial by Deputy Marshal Alcorn. After the jury was impaneled, counsel for appellant approached the bench where he lodged an objection about the fact that Williams was "brought" into the courtroom in prison attire. The Court, out of con-

cern, made detailed inquiries concerning the situation. Appellant's attorney, after conferring with Williams reported to the Court that Williams did have a "civilian" pair of pants and shirt in the Salt Lake jail; that he was asked whether he wanted to change into them before driving to Ogden for the trial; that Williams did not think they were "any better than the ones" he had on in court; that he did not have "anything else to wear." Deputy Marshal Alcorn stated that Williams was asked in Salt Lake before leaving for trial in Ogden if he wanted to change to his street clothes rather than his jail clothes; that Williams had responded that it would be to his advantage to be in jail clothes; and that Williams did not say anything to the Deputy Marshal about the condition of his street clothes.

With respect to Williams' attire in court, the Trial Judge observed that the white T-shirt he was wearing appeared to be dirty. The Court then observed that while Williams had already made the decision to wear jail attire rather than street clothes, that even so during the noon recess the Deputy Marshal was to obtain clean jail attire for Williams. When trial was resumed after lunch, Williams was dressed in new, clean slacks and a shirt which had been purchased for him by the Deputy Marshal. Counsel for Williams moved for mistrial on the grounds that appellant had been prejudiced in the eyes of the jury by reason of being displayed to them earlier wearing the soiled jail clothing. In denying the motion, the Court stated and concluded:

> The Court is of the opinion the question of attire has been properly handled. The Court had the marshal speak on the record before counsel, apart from the jury, about what he did; and it seems to me the marshal was solicitous of this problem and did present the defendant with an opportunity that he made a decision which the marshal relied on, and as, Mr. Marsh, you have acknowledged, that might have been assisted in by you

had you had opportunity or thought of it earlier.

> I think we have acted reasonably since that time in an effort to alleviate any prejudice.

> It's the Court's judgment, however, that there has not been any substantial prejudice by reason of appearance for this much of the trial in the T-shirt and levi's. While they did in the Court's mind justify the action taken in attempting to improve his appearance, they were not so bedraggled in appearance nor dirty or unseemly as to accomplish any necessary prejudice, as it seems to the Court.

> So the Court will conclude, as well, that the opening statement was not error. And the motions are denied.

(Tr., Vol. I, p. 13).

In support of his contention that his appearance in court before the jury in soiled jail clothing infringed upon his fundamental right to a presumption of innocence as secured by the Fourteenth Amendment, appellant relies principally upon Hernandez v. Beto, 443 F.2d 634 (5th Cir. 1971), cert. denied 404 U.S. 897, 92 S.Ct. 201, 30 L.Ed.2d 174 (1971) and Brooks v. State of Texas, 381 F.2d 619 (5th Cir. 1967). The holding in Hernandez v. Beto, *supra,* is that trial of a criminally accused while attired in prison clothing does infringe the fundamental right to the presumption of innocence. We expressly rejected this *per se* rule in Watt v. Page, 452 F.2d 1174 (10th Cir. 1972), cert. denied 405 U.S. 1070, 92 S.Ct. 1520, 31 L.Ed.2d 803 (1972):

> As to Hernandez v. Beto, we must say that we do not agree with the Fifth Circuit to the extent that an appearance in "jail clothing," if established, leads to any automatic result if its opinion so infers.

452 F.2d at 1175.

In Anderson v. Watt, 475 F.2d 881 (10th Cir. 1973), we re-affirmed the rule we adopted in Watt v. Page, *supra,* i. e., that the nature of the clothing worn by a defendant at his trial is not

inherently prejudicial to his right to a fair and impartial trial. In *Anderson,* we affirmed the trial court's finding that the accused was, beyond a reasonable doubt, in accordance with the standard prescribed under Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), denied a fair trial by reason of his appearance in jail coveralls with the words "Oklahoma County Jail 44" stenciled in large letters across the back *specifically because the District Court found that there was no deliberate desire on the part of the petitioner to be tried in his jail clothes for the purpose of sympathy or any other purpose in his behalf.* (Emphasis ours). We also found that Anderson was prejudiced during trial when the prosecution referred to him as "the man in coveralls" and when the prosecutor, in closing arguments, made reference to Anderson and "his kind."

We hold that the Trial Court did not err in denying the appellant's motion for mistrial following his initial appearance in soiled jail clothing. In direct contrast to the circumstances in Anderson v. Watt, supra, here it is uncontroverted that Williams chose to wear the jail clothing in lieu of his street clothes. Even though his street clothing, consisting of a suit coat and pants, were not the "best" appearing attire, the trial judge found that they were suitable for court appearance. Accordingly, the Court concluded that " . . . his choice to appear in jail attire was a choice not of the best between the two, but a choice for other reasons." (Tr. Vol. I, p. 158). We agree. Appellant's choice was knowing, voluntary, deliberate and uncoerced. This choice fits squarely within these observations made in Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943):

> We cannot permit an accused to elect to pursue one course at the trial and then, when that has proved to be unprofitable, to insist on appeal that the course which he rejected at the trial be re-opened to him. However unwise the first choice may have been,

the range of waiver is wide. Since the protection which could have been obtained was plainly waived, the accused cannot now be heard to charge the court with depriving him of a fair trial.

318 U.S. at 201.

The trial court's position in the case at bar is bolstered by the language of the Court in the case of Hernandez v. Beto, *supra,* so heavily relied upon by the appellant here, where that Court held, upon rehearing, that "A defendant may not remain silent and willingly go to trial in prison garb and thereafter claim error." 443 F.2d at 637.

## II.

Appellant alleges that the Trial Court erred by failing to adequately define the elements of the crime charged. We disagree.

Williams was charged with interstate transportation of a "forged and falsely made security." After reviewing the Court's proposed instructions, appellant requested a specific instruction defining the word "forged" and "made in the likeness of something else; in imitation of something else, done with the view to defraud by passing the false copy for a genuine or original. As used in the criminal statutes, the words 'forged' and 'falsely made' are homogeneous, partaking of each other. That is, they are to be construed as synonymous terms." (R., Vol. II, p. 18). This instruction, it is agreed, is basically the common law definition of the word "forged."

The Government objected to the tendered instruction on the ground that our Court has not applied the common law definition of "forged" to the words "falsely made, forged" as contained and used in 18 U.S.C.A. § 2314, *supra.* In lieu of the requested instruction, the Court did orally instruct the jury:

> As used in these instructions and in the criminal statutes—statute giving rise to the charge—the word, "falsely made" means made to resemble that which is genuine, but not being genu-

ine. False. "Forged" means made to simulate that which is genuine, constructed to represent that which is true and genuine, but not being such.

These terms under the law that applies in this case are construed as homogeneous, partaking of each other. They are synonymous terms describing the spurious or fictitious making of an instrument.

(Tr., Vol. I, p. 145).

The Court did give the following written instruction:

As used in criminal statutes, the words "falsely made" and "forged" are homogeneous, partaking of each other. That is, they are to be construed as synonymous—terms describing the spurious or fictitious making of an instrument.

(Tr., Vol. II, p. 10).

■ Appellant's argument that the trial court erred in not giving the proffered instruction setting forth that which the appellant refers to as the commonly accepted definition of "forged" is apparently predicated on the proposition that since the blank money order was genuine, the appellant's subsequent spurious, fictitious and unauthorized execution of it did not constitute forgery or false making. This argument is without merit. There is substantial evidence in the record that Williams did not have authority to possess the money order; that he was not authorized to sign his name as payee, that the purported drawer had no authority to sign the money order; that the amount of money showing thereon had been placed there by means of a stolen check protector; and that the execution and/or making of the money order was spurious and fictitious.

In Boyd v. United States, 442 F.2d 1283 (10th Cir. 1971), the appellant was charged with violation of the same statute Williams was charged with here, i. e., 18 U.S.C.A. § 2314. We held that appellant Boyd, by falsely representing himself to the bank officer as Melvin Pulley (the fictitious payee), using the borrowed driver's permit of Pulley as identification, authorized the jury to conclude that Boyd knew the money order was falsely made when he took it to the bank to be cashed. In that opinion, we favorably quoted United States v. Smith, 426 F.2d 275 (6th Cir. 1970), cert. denied 400 U.S. 868, 91 S.Ct. 110, 27 L.Ed.2d 107 (1970):

Accordingly, the important inquiry . . . is whether the completion of the blank money orders constituted a false representation or a false execution. We hold that it constituted a false execution. The money orders were not, at the time of the thefts, evidence of an obligation on the part of the issuing company. It was necessary to insert the agent's symbol, an amount, a sender's name, and the name of the payee in order to create an obligation . . .. Here, the insertion of the necessary information on the blank money orders constituted a false making within the meaning of the statute.

426 F.2d at 276.

And in Marteney v. United States, 216 F.2d 760 (10th Cir. 1954), involving an appeal from sentence on pleas of guilty to separate counts charging violations of 18 U.S.C.A. § 2314, we held:

As used in criminal statutes, the words "falsely made" and "forged" are homogeneous, partaking of each other. They have always been synonymously construed to describe a spurious or fictitious making as distinguished from a false or fraudulent statement. The words relate to genuineness of execution and not falsity of content.

216 F.2d at 763.

See also United States v. Tasher, 453 F. 2d 244 (10th Cir. 1972).

Affirmed.