UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert Dahle SPARROW,
Defendant-Appellant.

No. 78–2017.

United States Court of Appeals,
Tenth Circuit.

Argued Oct. 16, 1979.

Decided Jan. 10, 1980.

Steven W. Snarr, Asst. U. S. Atty., Salt Lake City, Utah (Ronald L. Rencher, U. S. Atty., Salt Lake City, Utah, with him on brief), for plaintiff-appellee.

Wendell P. Ables, Salt Lake City, Utah (Daniel J. Sears, Federal Public Defender, Denver, Colo., with him on brief), for defendant-appellant.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

Robert Dahle Sparrow (Sparrow) appeals his jury conviction of two counts of interstate transportation of a falsely made or forged security in violation of 18 U.S.C.A. § 2314 and one count of submitting a false statement to a bank in violation of 18 U.S.C.A. § 1014. The dispositive facts are not in dispute.

On May 26, 1976, Sparrow contacted the Sandy, Utah, branch of the Walker Bank and Trust Company (Bank) to secure financing for the purchase of a used 1976 Cadillac. On May 28, 1976 Sparrow received a loan from Bank in amount of $8,700 to purchase the car. In effecting the loan, an officer of Bank recorded its lien on the back of the original Oregon certificate of title for the vehicle which had been endorsed over to Sparrow as its purchaser. Bank then allowed Sparrow to take the title certificate in order that he could refile it in his own name in Idaho.

On July 12, 1976, Sparrow applied for an Idaho title for the car. In so doing, he submitted the original Oregon certificate of title for the car, endorsed over to him as purchaser. Bank, however, was no longer recorded on the back of the title certificate as a lienholder. Sparrow was, at that time, listed as both the owner and lienholder.

Although Sparrow's listing as both owner and lienholder was questioned, an Idaho title certificate was issued to him on or about July 12, 1976. On July 14, 1976, Sparrow traded the Cadillac for a new Chevrolet Monza at Streater Chevrolet in Salt Lake City. Sparrow warranted, by a bill of sale, that the Cadillac was free and clear of any third party interests. As part of the deal, Sparrow received a $2,846.00 check for the difference in value of the two cars.

On August 9, 1976, although he had already traded it, Sparrow notified his insurance company that the Cadillac was stolen on August 7, 1976. A claim was filed by Sparrow for the alleged loss and the police were also notified.

On September 7, 1976, Sparrow applied for a duplicate Oregon certificate of title and transfer. Thereafter, an Oregon title was issued in Sparrow's name and sent to Bank, showing Bank as lienholder.

On September 9, 1976, Gerald Smith, manager of Bank, called Sparrow to check on the status of the Oregon title. Sparrow related to Smith that the title certificate had been applied for but that the car had been stolen and the theft reported to the insurance company. Thereafter Smith called the insurance company to confirm that the loss had been reported. Subsequently the Oregon title was received by Bank.

On April 19, 1978, a grand jury handed down an indictment charging Sparrow as follows:

## COUNT I

On or about a day between the 28th day of May, 1976, and the 12th day of July, 1976, ROBERT DAHLE SPARROW did transport in interstate commerce from Sandy, Utah, within the Central Division of the District of Utah, to Boise, Idaho, a falsely made, forged and altered security, that is, a title to a 1976 Cadillac Coupe DeVille vehicle, knowing the same to have been falsely made, forged and altered; all in violation of Section 2314, Title 18, United States Code.

## COUNT II

On or about the 8th day of September, 1976, ROBERT DAHLE SPARROW did transport or cause to be transported in interstate commerce from Salem, Oregon, to Sandy, Utah, within the Central Division of the District of Utah, a falsely made, forged and altered security, that is, a title to a 1976 Cadillac Coupe DeVille vehicle, knowing the same to have been falsely made, forged and altered; all in violation of Section 2314, Title 18, United States Code.

## COUNT III

On or about the 8th day of September, 1976, at Sandy, Utah, in the Central Division of the District of Utah, ROBERT DAHLE SPARROW knowingly did make a materially false statement in a security submitted as collateral on a loan previously obtained from the Walker Bank and Trust Company, Sandy, Utah Branch, a bank the deposits of which were then insured by the Federal Deposit Insurance Corporation, for the purpose of influencing the action of said bank regarding its security interest in a 1976 Cadillac Coupe DeVille vehicle, in that ROBERT DAHLE SPARROW stated and represented that the vehicle had been registered in the State of Oregon and stolen in the State of Idaho, when in truth and in fact, as ROBERT DAHLE SPARROW then and there well knew, the 1976 Cadillac vehicle had been registered in the State of Idaho and sold in the State of Utah; all in violation of Section 1014, Title 18, United States Code. [R. Vol. II, at pp. 1–2.]

On appeal Sparrow contends that: (1) there is no evidence that the certificate of title described in Count I was altered before being transported interstate; (2) the certificate of title described in Count II was not a forgery or falsely made document within the meaning of § 2314; (3) he was denied effective assistance of counsel; and (4) the evidence does not support a verdict of guilty to Count III.

### I.

Sparrow contends that the government presented no evidence that the certificate of title described in Count I was altered before being transported interstate. Sparrow argues that under § 2314 a violation occurs *only* when a party *transports* in interstate or foreign commerce "any falsely made, forged, altered or counterfeited securities" and that the Government failed to establish that the certificate of title referred to in Count I was altered prior to being transported in interstate commerce, i. e., from Sandy, Utah to Boise, Idaho. Sparrow cites to *United States v. Owens*, 460 F.2d 467 (5th Cir. 1972) as supportive of his contention. In *Owens, supra*, the Court observed:

Under 18 U.S.C.A. § 2314, it is unlawful for any person to transport "in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited; . . ." It is obvious that to prove the commission of an offense under this portion of section 2314 the Government must show that the instrument traveled interstate in its forged or altered condition. The difficulty of detecting and proving the locale of the alteration or forgery of the security has engendered a presumption in aid of proof. As early as 1822 Judge Story instructed a jury that there exists a presumption that an instrument was forged where it was first found in its altered state or uttered. *United States v. Britton*, C.C.D.Mass.1822, 24 Fed.Cas. 1239, 1241 (No. 14,650). Applying this rule to the instant case, a presumption arises that the five money orders which the defendant attempted to utter were falsely made and forged in Louisiana. Of course, as the Government correctly notes, this presumption does not obtain when circumstances reasonably indicate that alteration or forgery occurred outside the jurisdiction where the instrument was first found in its forged state or uttered. *See, e. g., Castle v. United States*, 5 Cir. 1961, 287 F.2d 657. In the instant case the Government advances several circumstances which allegedly assuage the probative force of this presumption and affirmatively show beyond a reasonable doubt that the five money orders did not make an interstate journey in their pristine state. 460 F.2d at p. 469.

In his reply brief, Sparrow further contends that the sole circumstance relied on by the Government to overcome the presumption that the title certificate was altered in Utah rather than in Idaho, i. e., his continued possession thereof, is without merit, when as here, he maintained a resi-

dence in Idaho and insured the car with an Idaho insurance agent.

■ We decline to adopt *Owens, supra.* We hold, contrary thereto, that a § 2314 conviction may be obtained without proof that a security was altered prior to movement in interstate commerce, when, as here, continued possession thereof is not challenged. Sparrow misapprehends the import of § 2314. The "*essence of the offense is the fraudulent scheme itself and the interstate element*" is included solely to afford federal jurisdiction. This principle was enunciated in detail by this Court in *United States v. Newson*, 531 F.2d 979 (10th Cir. 1976):

> As to the substantive charge under section 2314, the courts have been consistent in holding that the cashing of a check or money order in one state, drawn on a bank in another state, is competent evidence that the instrument would of necessity have to travel in interstate commerce. *There is no requirement of actual physical transportation by a defendant and it is sufficient that a defendant cause the instrument to be transported by the negotiation process.* Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435; *United States v. Gundersen*, 9 Cir., 518 F.2d 960; *United States v. Roby*, 10 Cir. 499 F.2d 151. *It is also clearly established that actual knowledge of the interstate transportation of the instrument on the part of the defendant is not required.* United States v. Masters, 9 Cir., 456 F.2d 1060; *United States v. Powers*, 9 Cir., 437 F.2d 1160; *United States v. Mingoia*, 2 Cir., 424 F.2d 710. *The essence of the offense is the fraudulent scheme itself and the interstate element is only included to provide a constitutional basis for the exercise of federal jurisdiction.* United States v. Roselli, 9 Cir., 432 F.2d 879, cert. denied, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828. [Emphasis supplied.] 531 F.2d at p. 981.

Our analysis of § 2314, as set forth in *Newson, supra,* has been consistently applied by many courts, as articulated in *United States v. Ludwig,* 523 F.2d 705 (8th Cir. 1975), *cert. denied,* 423 U.S. 1076, 96 S.Ct. 861, 47 L.Ed.2d 86 (1976) wherein the court observed:

> The case authority indicates that the intent of Congress in enacting the National Stolen Property Act was to provide a means whereby federal authority could be invoked to punish unlawful deprivations of property which, by virtue of their interstate character, might escape the prosecutorial efforts of the states. As stated by the Supreme Court in *United States v. Sheridan*, 329 U.S. 379, 384, 67 S.Ct. 332, 335, 91 L.Ed. 359 (1946), in reference to the statutory predecessor of § 2314:
>
>> Congress had in mind preventing further frauds or the completion of frauds partially executed. But it also contemplated coming to the aid of the states in detecting and punishing criminals whose offenses are complete under state law, but who utilize the channels of interstate commerce to make a successful get away and thus make the state's detecting and punitive processes impotent.

In the subsequent cases of *Lyda v. United States*, 279 F.2d 461, 464 (5th Cir. 1960), the Fifth Circuit emphasized the broad reach of § 2314 with respect to unlawful deprivations of property, a reach limited only by the subsequent fact of transportation in interstate commerce:

> * * * The aim of the statute is, of course, to prohibit the use of interstate transportation facilities for goods having certain unlawful qualities. This reflects a congressional purpose to reach all ways by which an owner is wrongfully deprived of the use or benefits of the use of his property. * * * Congress by the use of broad terms was trying to make clear that if a person was deprived of his property by unlawful means * * * by fraud, swindling, or by conversion by one rightfully in possession, the subsequent transportation of such goods in interstate commerce was prohibited as a crime.

These observations as to congressional intent lead to the conclusion that the requirement of interstate transportation under § 2314 was intended merely to supply a constitutional basis for the exercise of federal power. As aptly stated by the Ninth Circuit in *United States v. Roselli*, 432 F.2d 879, 891 (9th Cir. 1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971):

> * * * section 2314 is aimed at the evils of theft, fraud, and counterfeiting and not at the regulation of interstate transportation. Suppression of movement of the fruits of theft and fraud is only the means to the end of suppressing theft and fraud themselves. The sole reason for conditioning the statutes' prohibitions upon use of interstate commerce is to provide a constitutional basis for the exercise of federal power.

Since interstate transportation is merely the linchpin for federal jurisdiction and bears no relationship, in terms of culpability, to the underlying criminal acts which are the objects of § 2314, it follows that the government should not have to prove that the interstate transport was in any way reasonably foreseeable. Of course, this conclusion is in accord with the wording of the statute, which does not by its terms include any requirement of reasonable foreseeability as to the interstate element of the offense. More important, several appellate cases have held that the fact of interstate transportation, without more, is sufficient under the statute. 523 F.2d at p. 707.

Applying this standard, we hold that the Government presented sufficient evidence to sustain Sparrow's conviction under Count I. Even if we assume that Sparrow did not, in fact, alter/forge the certificate of title *in Utah* prior to his presentation of the certificate in its *altered/forged* condition in Idaho where he obtained the re-issued certificate which, of course, did not reflect the Bank's security in the 1976 Cadillac of $8,700.00, still the entire fraudulent scheme encompassed by the three-count indictment had both its *origin* and *consummation* in the District of Utah and the inter-state movement of the certificates of title was, at all times, the central means of accomplishing the criminal design. At all times, Sparrow was either in actual possession of or in constructive control of the certificates of title, the documents which he exhibited in fraudulent, misrepresented states *as true*, in the course of their interstate movements above outlined. Not only did Sparrow conceive the fraudulent scheme in Utah, but he consummated the scheme in that state by false and fraudulent representation of the validity of the subject altered and/or false certificates of title, documents he employed to obtain financial advantage by means of criminal fraud. We thus agree with the language employed in *United States v. Willis*, 528 F.2d 381 (9th Cir. 1976) that "all § 2314 requires is that Defendant either transport or cause to be transported in interstate commerce the forged security [as so determined at some particular time and place] knowing it was forged [or falsely made or altered]." 528 F.2d at p. 382.

## II.

Sparrow contends that the certificate of title described in Count II was not a forgery or falsely made document within the meaning of § 2314. Count II charged that on or about September 8, 1976, Sparrow caused a duplicate title certificate to be sent from Oregon to Bank in Utah, knowing the same to have been falsely made, forged and uttered. As noted, *supra*, it is uncontested that several months prior to this time, on or about July 14, 1976, Sparrow had traded the Cadillac for a new Chevrolet and cash in Salt Lake City, Utah. Nonetheless, Sparrow argues that inasmuch as the Oregon certificate of title was properly drafted and it "is itself genuine, it is not a 'forgery' or 'falsely made' within the meaning of § 2314." Sparrow relies on *Marteney v. United States*, 216 F.2d 760 (10th Cir. 1954), *cert. denied*, 348 U.S. 953, 75 S.Ct. 442, 99 L.Ed. 745 (1955), wherein we stated:

> As used in criminal statutes, the words "falsely made" and "forged" are homoge-

neous, partaking of each other. They have always been synonymously construed to describe a spurious or fictitious making as distinguished from a false or fraudulent statement. The words relate to genuineness of execution and not falsity of content. *United States v. Moore*, D.C., 60 F. 738; *United States v. Wentworth & O'Neil*, C.C., 11 F. 52; *Territory v. Gutierrez*, 13 N.M. 312, 84 P. 525; *DeRose v. People*, 64 Colo. 332, 171 P. 359, L.R.A. 1918C, 1193; *State v. Ford*, 89 Or. 121, 172 P. 802; *People v. Kramer*, 352 Ill. 304, 185 N.E. 590; *Graham v. State*, 121 Tex.Cr.R. 100, 51 S.W.2d 369; Words & Phrases, p. 137. Making application of this construction of the words as employed in Section 2314, it has been uniformly held that a check drawn by a true maker on an existing bank is not "falsely made" or "forged" within the meaning of the statute, even though there were no funds to the account of the drawer in the drawee bank; and, that an indictment or information which affirmatively describes the falsely made and forged security in this manner states no federal offense under Section 2314. 216 F.2d at p. 763.

Sparrow also cites to our *United States v. Crim*, 527 F.2d 289 (10th Cir. 1975), *cert. denied*, 425 U.S. 905, 96 S.Ct. 1497, 47 L.Ed.2d 755 (1976), as supportive of his position. We disagree. In *Crim, supra,* we clarified *Marteney, supra.* We left no room for doubt that defendants in Sparrow's situation could be convicted under § 2314. We stated in *Crim, supra* :

As used in criminal statutes, the words "falsely made" and "forged" are homogeneous. They have been used to describe a "spurious or fictitious making", and, as such, relate to the "genuineness of execution". *Marteney v. United States*, 216 F.2d 760 (10th Cir. 1954), cert. denied, 348 U.S. 953, 75 S.Ct. 442, 99 L.Ed. 745 (1955). *Crim knew at the execution of the checks that the signature of "Cole" was falsely made and not genuine, since he was no longer using the name "Cole"; such knowledge may be imputed to him. United States v. Tasher*, 453 F.2d 244 (10th Cir. 1972). Furthermore, *by sign-*

*ing an assumed name, Crim's actions tended to establish fraudulent intent. Kreuter v. United States*, 201 F.2d 33 (10th Cir. 1952). *They likewise tended to establish a scheme to defraud. United States v. Scott*, 457 F.2d 848 (10th Cir. 1972), cert. denied, 409 U.S. 866, 93 S.Ct. 160, 34 L.Ed.2d 114 (1972). Crim's actions further caused the checks to move in interstate commerce in violation of Section 2314, *supra. Kreuter v. United States*, 376 F.2d 654 (10th Cir. 1967), cert. denied, 390 U.S. 1015, 88 S.Ct. 1267, 20 L.Ed.2d 165 (1968). [Emphasis supplied]. 527 F.2d at p. 294.

■ In the instant case, Sparrow knew that the titling of the Cadillac in his name was falsely made and *could not be genuine* inasmuch as he no longer owned the vehicle and had not owned it for several months. As in *Crim, supra,* Sparrow's actions tended to establish fraudulent intent and a scheme to defraud, which, as we noted in *Crim,* citing to our *United States v. Newson, supra,* is the essence of a § 2314 violation. Under these circumstances, Sparrow's arguments do not pass muster.

■ The mere fact that a draft, money order, or certificate of title, such as here, is genuine, does not, in and of itself, preclude a § 2314 conviction. In *United States v. Williams*, 498 F.2d 547 (10th Cir. 1974), we observed:

Appellant's argument that the trial court erred in not giving the proffered instruction setting forth that which the appellant refers to as the commonly accepted definition of "forged" is apparently predicated on the proposition that since the blank money order was genuine, the appellant's subsequent spurious, fictitious and unauthorized execution of it did not constitute forgery or false making. *This argument is without merit.* There is substantial evidence in the record that Williams did not have authority to possess the money order; that he was not authorized to sign his name as payee, that the purported drawer had no authority to sign the money order; that the amount

of money showing thereon had been placed there by means of a stolen check protector; and that the execution and/or making of the money order was spurious and fictitious. [Emphasis supplied]. 498 F.2d at p. 551.

As in *Williams, supra,* it is uncontested that Sparrow did not have authority to possess or even request the title set forth in Count II, inasmuch as he had already sold the vehicle. Under these circumstances, the drawer or maker, the State of Oregon was without authority to draft the certificate of title. Thus, Sparrow's actions giving rise to the "execution and/or making of the . . . [title] . . . were spurious and fictitious".

### III.

We have carefully considered Sparrow's remaining allegations of error. We hold that they are individually and collectively without merit.

WE AFFIRM.

McKAY, Circuit Judge, dissenting:

### Count I

The majority holds that a § 2314 conviction for transporting in interstate commerce a falsely made, forged or altered security may be obtained without proof that the security was altered prior to its being transported in interstate commerce. The majority misapprehends not only the import of § 2314 but also the limitations inherent in construing criminal statutes.

The majority can cite no case where a § 2314 conviction was sustained without proof that the security was altered prior to movement in interstate commerce. Three circuits, on the other hand, have recognized that the security must be transported across state lines in a forged or altered condition. *United States v. Hilyer,* 543 F.2d 41, 43 (8th Cir. 1976); *United States v. Lee,* 485 F.2d 41, 45–46 (4th Cir. 1973); *United States v. Owens,* 460 F.2d 467, 469 (5th Cir. 1972). Furthermore, there is a rebuttable presumption that the forgery or alteration oc-

curred in the state where the instrument was first found in a forged or altered condition. *United States v. Lee,* 485 F.2d at 45–46; *United States v. Owens,* 460 F.2d at 469; *Conley v. United States,* 23 F.2d 226, 228 (4th Cir. 1928); *United States v. Britton,* 24 Fed.Cas. 1239, 1241 (C.C.D.Mass. 1822). *See also United States v. Lewis,* 560 F.2d 901, 903 n. 1 (8th Cir. 1977). In this case the document was first found in an altered condition in Idaho and no evidence was introduced to suggest it was altered before leaving Utah.

If, as the majority asserts, the "essence of the offense" under § 2314 is only the fraudulent scheme, Maj. Op. at 232, any violation of a local law could become a federal offense merely by the incidental interstate travel of a perpetrator before, after or during the criminal activity. This concept, though interesting, is contrary to the weight of authority. For instance, it is established that § 2314 does not purport to punish larceny, but the transportation in interstate commerce of goods after they have been stolen. *Loman v. United States,* 243 F.2d 327, 328–29 (8th Cir. 1957). The Ninth Circuit has specifically held that § 2314 "proscribes not the passing but rather the *transportation* of forged checks." *Gilinsky v. United States,* 368 F.2d 487, 490 (9th Cir. 1966) (emphasis added).

The Ninth Circuit, incidentally, is the root source of the idea relied upon by the majority that the interstate element of federal crimes is included solely to justify the exercise of federal jurisdiction rather than a substantive element of the crime. *See* Maj. Op. at 231. The majority quotes *United States v. Newson,* 531 F.2d 979, 981 (10th Cir. 1976) and *United States v. Roselli,* 432 F.2d 879, 891 (9th Cir. 1970), *cert. denied,* 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971). However, the factual postures of both *Newson* and *Roselli* make them poor precedent for the issue presented here. In both cases, interstate transportation of the securities *after* they were the subjects of the proscribed activity was established.[1]

---

1. In *Newson,* stolen money orders cashed in Colorado were processed through the Federal

Reserve banking system for payment in Minnesota. There was clear testimony that the de-

The issue in both cases was whether the defendant must have actual knowledge of the interstate transportation. However, a finding that actual knowledge of interstate transportation is not required for conviction under § 2314 does not lead inexorably to the conclusion that the interstate element of § 2314 is not substantive.

*Lyda v. United States,* 279 F.2d 461, 464 (5th Cir. 1960), relied upon by the majority, defines the aim of the statute as prohibiting "the use of interstate transportation facilities for goods having certain unlawful qualities." The Fifth Circuit did not include goods which were to later acquire unlawful qualities. The statute by its terms prohibits "transport[ing] in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities," 18 U.S.C. § 2314, not the forging or altering of securities which have been transported interstate. The place where the scheme is conceived or where its ultimate impact will fall is not made important by the statute. A broad congressional intent to ferret out the evils of theft and fraud wherever they lurk, even if unequivocally established, is not determinative. A criminal defendant can suffer the penalties of a statute only when his conduct satisfies the specific terms used in the statute. The rule is clear that a criminal statute is limited to its terms; it "must be strictly construed and any ambiguity must be resolved in favor of lenity." *United States v. Enmons,* 410 U.S. 396, 411, 93 S.Ct. 1007, 1015, 35 L.Ed.2d 379 (1973); *United States v. Campos-Serrano,* 404 U.S. 293, 297, 92 S.Ct. 471, 30 L.Ed.2d 457 (1971); *United States v. Fisher,* 456 F.2d 1143, 1145 (10th Cir. 1972).

Because there is no evidence in this case that the title certificate was altered in Utah prior to being taken to Idaho, there was no showing that § 2314 was violated. I would reverse Count I.

*Count II*

In discussing Count II, the majority again relies on the argument that "a scheme to defraud . . . is the essence of a § 2314 violation." Maj. Op. at 234. Again, § 2314 requires more than an evil essence. Sparrow's action in obtaining an Oregon title certificate after disposing of the car may constitute a state crime or even a violation of another federal criminal statute, but it is not a violation of § 2314. Because the Oregon certificate of title was genuinely executed, it was not a forged or falsely made security for purposes of § 2314, even under the Tenth Circuit view prior to this case. *See Marteney v. United States,* 216 F.2d 760 (10th Cir. 1954). "Telling a lie does not become forgery because it is reduced to writing." *Re Windsor,* 6 Best & S. 522, 122 Eng.Rep. 1288 (1865) (Blackburn, J., concurring).

The majority acknowledges our decision in *Marteney* where we held that the words "forged" and "falsely made" relate to "genuineness. of execution and not falsity of content." 216 F.2d at 763. The problem comes in the majority's discussion of two subsequent decisions, *United States v. Crim,* 527 F.2d 289 (10th Cir. 1975), *cert. denied,* 425 U.S. 905, 96 S.Ct. 1497, 47 L.Ed.2d 755 (1976) and *United States v. Williams,* 498 F.2d 547 (10th Cir. 1974). *Crim* and *Williams* are clearly distinguishable from both *Marteney* and the facts of this case. In *Crim* the defendant signed checks with a name he was no longer using. The false signature made the instruments fraudulent in the execution. Likewise, a "spurious, fictitious and unauthorized execution" was at the core of the decision in *Williams.* 498 F.2d at 551. In *Marteney,* on the other hand, this court recognized that there could be no violation of § 2314 because "both the warehouse receipt and the true-name check are what they purport to be; . . . neither of them are *[sic]* false or forged in their execution, although they may be false

fendant procured the negotiation of the stolen instruments, thereby causing their interstate transportation. 531 F.2d at 980–81. In *Roselli* the court found sufficient evidence for the jury

to conclude that the checks obtained from illegal gambling operations in Los Angeles were then transported to Las Vegas. 432 F.2d at 890.

in fact." 216 F.2d at 763. Similarly, in this case, the certificate of title was duly executed by Oregon officials. The certificate itself was precisely what it purported to be. Only the facts underlying the document were false.

The distinction between fraudulent execution and falsity of content is unmistakably drawn in several well reasoned opinions from other circuits. In *United States v. Jones,* 553 F.2d 351 (4th Cir.), *cert. denied,* 431 U.S. 968, 97 S.Ct. 2928, 53 L.Ed.2d 1064 (1977), for instance, it was determined that checks issued to the defendant as a result of fraudulent alterations of a company's accounts payable were not forged or falsely made under § 2314. Although such conduct could constitute fraud or false pretenses, the checks as issued by the company were genuine in execution and were, therefore, not forgeries. 553 F.2d at 355–56. *See Cunningham v. United States,* 272 F.2d 791, 793–94 (4th Cir. 1959); *United States v. Brown,* 246 F.2d 541, 542–43 (2d Cir. 1957); *Wright v. United States,* 172 F.2d 310, 311–12 (9th Cir. 1949); *Pines v. United States,* 123 F.2d 825, 828 (8th Cir. 1941). *See also Gilbert v. United States,* 370 U.S. 650, 655–59, 82 S.Ct. 1399, 8 L.Ed.2d 750 (1962);[2] 41 A.L.R. 229, Supplemented, 46 A.L.R. 1529, 51 A.L.R. 568.

Not only does today's decision run contrary to the language of § 2314 and the uniform decisions of other circuits, it implicitly overturns *Marteney* without convening en banc as is our practice when reconsidering our prior cases. In addition, the majority violates the rule of strict construction applied to criminal statutes. "The fact that a particular activity may be within the same general classification and policy of those covered [by a criminal statute] does not necessarily bring it within the ambit of the criminal prohibition." *United States v. Boston & Maine Railroad,* 380 U.S. 157, 160, 85 S.Ct. 868, 870, 13 L.Ed.2d 728 (1965). *See Bouie v. City of Columbia,* 378 U.S. 347, 351–54, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).

All of these consequences seem particularly unnecessary in view of the fact that we have sustained the properly pled and proved conviction under Count III, which carries a two-year sentence, as well as six concurrent sentences (four five-year and two six-year sentences) in an accompanying case. *See United States v. Robert D. Sparrow,* No. 78–1882 (10th Cir. 1979). *See also United States v. Sparrow,* 470 F.2d 885 (10th Cir. 1972), *cert. denied,* 411 U.S. 936, 93 S.Ct. 1913, 36 L.Ed.2d 397 (1973).

For these reasons, I would reverse the convictions of Counts I and II.

---

**2.** Although the court in *Gilbert* was dealing with the concept of forgery under 18 U.S.C. § 495, it cited with approval cases which had given the same construction to forgery under § 2314. 370 U.S. at 657, 82 S.Ct. 1399 (citing, *e. g., Marteney; Greathouse v. United States,* 170 F.2d 512 (4th Cir. 1948)).