**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert Dahle SPARROW,
Defendant–Appellant.**

**No. 78–2017.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Sept. 17, 1980.

Decided Dec. 2, 1980.

Steven W. Snarr, Asst. U. S. Atty., Salt Lake City, Utah (Ronald L. Rencher, U. S. Atty., for the District of Utah, Salt Lake City, Utah, with him on the brief), for plaintiff–appellee.

Wendell P. Ables, Salt Lake City, Utah (Daniel J. Sears, Federal Public Defender, Denver, Colo., with him on the brief), for defendant–appellant.

Before SETH, Chief Judge, and HOLLOWAY, McWILLIAMS, BARRETT, McKAY, LOGAN and SEYMOUR, Circuit Judges.

McKAY, Circuit Judge.

Defendant obtained from a Utah bank a purchase money loan for a Cadillac automobile. The bank's lien interest in the car was recorded on the back of the original Oregon certificate of title, which had been endorsed over to defendant as purchaser. The title certificate was then given to defendant so he could re-file it in Idaho. When defendant filed the same document in Idaho, his own name appeared where the actual lienholder's name had been. There was no evidence at trial showing where the unauthorized alteration was made; the evidence only showed that the certificate of title was altered when filed in Idaho.

Defendant later traded the Cadillac to a Utah dealer, and thereafter applied for a duplicate Oregon title certificate in his name. When an officer of the Utah bank inquired of defendant where the title to the Cadillac was, defendant told him a certificate was forthcoming from Oregon but that the Cadillac had been stolen.

Oregon issued the duplicate title certificate and mailed it to the Utah bank which defendant had indicated should be shown as lienholder on the new certificate. Some of the representations defendant made to the Oregon authorities in order to induce them to issue the new certificate of title were false, including his ownership of the Cadillac at the time of the application.

These activities led to conviction on a three-count federal indictment. Counts I and II charged violations of 18 U.S.C. § 2314 (transportation in interstate commerce of a forged or falsely made security).[1] Count I charged the interstate transportation of the altered certificate of title defendant presented in Idaho. Count II charged the interstate transportation of the duplicate title certificate defendant caused to be mailed from Oregon to Utah. Count III charged a violation of 18 U.S.C. § 1014 for making a materially false statement to the lienholder, a federally insured bank.

---

1. 18 U.S.C. § 2314 provides in relevant part:
   Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, know-

A majority of the panel which originally heard this appeal affirmed the conviction on all three counts. *United States v. Sparrow*, 614 F.2d 229 (10th Cir. 1980). We granted rehearing en banc to consider whether § 2314 requires proof that the security was altered prior to its being transported in interstate commerce, and whether the panel's conclusion that a security issued pursuant to false underlying information is a forged or falsely made security conflicts with our prior decision in *Marteney v. United States*, 216 F.2d 760 (10th Cir. 1954).

## Count I

■ The two circuits which have directly confronted the issue have held that § 2314 requires that the security be in a forged or altered condition at the time it travels in interstate commerce. *United States v. Hilyer*, 543 F.2d 41, 43 (8th Cir. 1976); *United States v. Owens*, 460 F.2d 467, 469 (5th Cir. 1972).[2] We agree that the plain meaning of the statute requires the prosecution to show that the security was in a forged or altered condition at the time of its interstate passage. The rule is clear that a criminal statute is limited to its terms; it "must be strictly construed, and any ambiguity must be resolved in favor of lenity." *United States v. Enmons*, 410 U.S. 396, 411, 93 S.Ct. 1007, 1015, 35 L.Ed.2d 379 (1973); *see also United States v. Campos-Serrano*, 404 U.S. 293, 297, 92 S.Ct. 471, 474, 30 L.Ed.2d 457 (1971); *United States v. Fisher*, 456 F.2d 1143, 1145 (10th Cir. 1972).

Because there is no evidence in this case that the title certificate was altered in Utah prior to being taken to Idaho, the conviction on Count I is reversed.

## Count II

■ In *Marteney v. United States*, 216 F.2d 760 (10th Cir. 1954), we held that the words "forged" and "falsely made" relate to "genuineness of execution and not falsity of content." 216 F.2d at 763. *Marteney* involved a warehouse receipt and a check which, like the Oregon certificate of title in this case, were issued pursuant to false information. We there recognized that there could be no violation of § 2314 because "both the warehouse receipt and the true-name check are what they purport to be; . . . neither of them are false or forged in their execution, although they may be false in fact." *Id.* Similarly, in this case, the certificate of title was duly executed by Oregon officials. The certificate itself was precisely what it purported to be. Only the facts underlying the document were false. Our decision in *Marteney* applied the plain language of the statute and mandated principles of construction. We see no reason to reverse that decision.

*United States v. Crim*, 527 F.2d 289 (10th Cir. 1975), *cert. denied*, 425 U.S. 905, 96 S. Ct. 1497, 47 L.Ed.2d 755 (1976), and *United States v. Williams*, 498 F.2d 547 (10th Cir. 1974), are not contrary. In *Crim* the defendant signed checks with a name he was no longer using. The false signature made the instruments fraudulent in the execu-

---

ing the same to have been falsely made, forged, altered, or counterfeited . . .

. . . . .

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

**2.** The Ninth Circuit has similarly stated that § 2314 "proscribes not the passing but rather the *transportation* of forged checks." *Gilinsky v. United States*, 368 F.2d 487, 490 (9th Cir. 1966) (emphasis added).

It has been argued that *United States v. Newson*, 531 F.2d 979 (10th Cir. 1976) and *United States v. Roselli*, 432 F.2d 879 (9th Cir. 1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971), support the proposition that the interstate commerce language in § 2314 is included solely to afford federal jurisdiction; *i. e.*, that so long as the subject title in this case crossed a state line at some point,

whether before or after alteration, federal jurisdiction is established and the court can proceed to determine guilt based on whether a fraudulent scheme was intended. Although *Newson* and *Roselli* contain dicta to this effect, *United States v. Newson*, 531 F.2d at 981; *United States v. Roselli*, 432 F.2d at 891, both cases were concerned with rejecting the notion that a defendant must have actual knowledge of interstate transportation to be convicted under § 2314. In both cases, interstate transportation of securities *after* they were the subjects of the proscribed activity was established. Neither case held, or had occasion to hold, that interstate transportation of a fraudulent document was not an essential element of the government's burden of proof when prosecuting a violation of § 2314.

tion. Likewise, a "spurious, fictitious and unauthorized execution" was at the core of the decision in *Williams.* 498 F.2d at 551. *Crim* and *Williams* are thus distinguishable from both *Marteney* and the facts of this case. Any suggestions in those opinions to the contrary are expressly disapproved.

Because the proof in this case showed only that the content of the Oregon title was false, and not that it was forged or falsely made, the conviction on Count II is reversed.

### Count III

In his appeal, defendant also challenged the sufficiency of the evidence to sustain Count III and argued that he had inadequate assistance of counsel. We have reviewed both contentions and agree with the majority of the original panel that they are without merit. The conviction and sentence on Count III are therefore affirmed.

This cause is remanded to the trial court with directions to set aside the convictions and sentences on Counts I and II.

BARRETT, Circuit Judge, dissenting, in which McWILLIAMS, Circuit Judge, joins:

I respectfully dissent. I adhere to the views expressed in *United States v. Sparrow,* 614 F.2d 229 (10th Cir. 1980).

I cannot accept the majority's holding that "Because there is no evidence in this case that the title certificate was altered in Utah prior to being taken to Idaho, the conviction on Count I is reversed." This places form over substance.

It is undisputed that Sparrow had continued possession of the title. It is also undisputed that the title was forged to effectuate a fraudulent scheme. Thus, Sparrow should not be permitted to circumvent a conviction under § 2314, the essence of which is the fraudulent scheme itself. The interstate element is included solely to afford federal jurisdiction. This is particularly true when, as here, the entire fraudulent scheme encompassed by the three-count indictment had *both* its origin and consumation in Utah. The interstate movement of the title, completely controlled by Sparrow, was at all times the central means of accomplishing the criminal design.

For similar reasons I cannot accept the majority's holding that "Because the proof in this case showed only that the content of the Oregon title was false, and not that it was forged or falsely made, the conviction on Count II is reversed."

The Government established that the Oregon title was false, *and* falsely made. Sparrow did not own the vehicle for which he obtained an Oregon title and he had not owned it for several months. Sparrow did not have the authority to request the title, and the State of Oregon as drafter or maker, was without true legal authority to issue the certificate. As such, the title was clearly false and falsely made.